# 𝕎𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

The Baltimore & Ohio R. R. Co., *vs.* Elizabeth Gettle, Administratrix.

January Term, 1869.

1. A declaration in an action brought under chapter 98, Acts 1863,* must aver that the decedent had a widow or next of kin, who must be accurately set forth and designated by name; and that the damages claimed were for the aid of and sustained by such widow or next of kin.

2. Where there has been an issue joined on a declaration to which a demurrer is subsequently sustained, and an amended declaration is filed to which no plea is entered, it is error to empannel a jury sworn to try the issues joined, when in fact no issue was joined on the amended declaration.

3. G. brought an action for damages under chapter 98, Acts of 1863, and on the trial evidence was offered by G. to prove her maintenance by the decedent in his lifetime, and also what it would cost to support her since his death. HELD:

   That as it was shown that the decedent was the son of G., lived with and supported her, and that he was only twenty-three years of age and unmarried, that it might be fairly implied that G. was the next of kin to decedent, and that the testimony was properly admitted.

4. A case in which the motion to set aside the verdict and grant a new trial, because the verdict was against law, contrary to and without evidence, was improperly overruled.

Elizabeth Gettle, as administratrix of Frederick Gettle, brought an action against the Baltimore and Ohio railroad company, in the circuit court of Berkeley county, to No-

---

* Be it enacted by the legislature of West Virginia:

1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person

vember rules, 1866. The action was trespass on the case. The declaration was filed at December rules following. In April, 1867, the defendant pleaded not guilty, and the case was continued. In October there was a demurrer to the declaration, which was sustained, and leave was given to file an amended declaration, which was done at the same term. The amended declaration was as follows:

"*Elizabeth Gettle, administratrix of Frederick Gettle, deceased*, vs. *Baltimore and Ohio railroad company*. Trespass on case. Amended declaration.

"The said Elizabeth Gettle, administratrix of the estate of Frederick Gettle, late of Berkeley county, deceased, by leave of the court now comes and files her amended declaration in this cause, and thereby complains of the said Baltimore and Ohio railroad company, a corporation created by the laws of Virginia, for that heretofore, to wit: on the 1st day of May, 1866, at the county of Berkeley, the said Frederick Gettle, her intestate, who was then and there in full life, was then and there in the employment of said defendant as a conductor and brakesman on a train of freight cars which were then and there running on said road, and that as such conductor and brakesman, it was then and there the duty of her said intestate, and he was then and there ordered and directed by said defendant to take his position and during the running of the train to be, and remain, on the top of the burden car at the rear end of the train.

"That before and at the time of committing the grievances

injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

2. Every such action shall be brought by and in the name of the personal representatives of such deceased persons; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal estates left by persons dying intestate, and in every such action the jury may give such damages as they shall deem fair and just, not exceeding five thousand dollars, with reference to the pecuniary injury resulting from such death to the wife and next of kin to such deceased person: provided, that every such action shall be commenced within two years after the death of such deceased person.

hereinafter mentioned, the defendant had constructed and used upon its road, in the train of which the plaintiff's intestate was then and there conductor and brakesman, burden cars so built and constructed that they could pass through and over the bridges on said road without any danger or exposure of persons on the tops of said cars.

"But plaintiff avers that on the day of the committing of the grievances hereinafter mentioned, the defendant had wrongfully put into said train, of which her said intestate was conductor and brakesman, and at the rear end of said train, a burden car that was differently constructed and higher than the cars that had theretofore been used and accustomed to run over said road, and in said train, that the said defendant then and there wholly failed and neglected to inform the plaintiff's intestate, that the said car, so put on said train was differently constructed and higher than the cars that had theretofore been used and accustomed to run over said road and in said train.

And the plaintiff further avers that her said intestate was wholly ignorant, and did not know that said car, upon the rear end of said train was differently constructed and higher than the cars that had theretofore been used and accustomed to run over said road and in said train.

"And the plaintiff further avers, that said defendant had so carelessly and negligently constructed the bridges on said road, that burden cars of ordinary construction and height could not safely pass over and through the said bridges without great and manifest peril and danger to the lives of the conductors and brakesmen situated on the top of said cars, in passing through said bridges.

"And the plaintiff further avers, that on the day and year aforesaid, at the county aforesaid, her said intestate, in the discharge of his duty and in obedience to the orders of said defendant, was situated on the top of the burden car at the rear end of his train, and when said train was passing over and through the bridge over Little Cacapon creek, without any negligence, or want of care and caution, on the part of her said intestate, he was struck upon the head by the

beams and timbers of said bridge, and knocked from said car and instantly killed.

"And the plaintiff avers, that the death of her said intestate was then and there caused by the negligence and carelessness of said defendant, in placing upon said road, and in said train, said car, that was higher and differently constructed from the cars that had been used and accustomed to run on said road and in said train, and by failing and neglecting to inform her said intestate of the height and construction of said car, and by carelessly and negligently constructing their bridges on said road, that cars of ordinary construction could not safely pass over and through such bridges.

"And the plaintiff avers, that the death of her said intestate was caused by such neglect and default of said defendant, as would have entitled her said intestate to have maintained an action against said defendant, if death had not ensued from said injury.

"And the plaintiff further avers, that her said intestete left no widow, and this action is brought for the sole purpose and exclusive use of the next of kin of the said Frederick Gettle, and that she has sustained damages, as administratrix, as aforesaid, in the sum of five thousand dollars, and thereupon she sues."

No plea was filed to this declaration.

In December following a trial was had but the jury failed to agree.

In May, 1868, another trial was had and a verdict rendered for the plaintiff, assessing damages at 1,200 dollars.

The plaintiff to maintain the issue on her part, "gave in evidence to the jury, that Frederick Gettle, the plaintiff's intestate, at the time he received the injury complained of, was the conductor of a freight train on defendant's road; that while he was acting as such conductor, and about twenty minutes after his train had passed through a bridge on defendant's road, he was picked up, taken to Martinsburg, to the house of the plaintiff, and that while being so taken, he died.

" She also offered to prove by Theodore Buser, that she had no means of support at the time of Gettle's death, and was wholly dependent upon his earnings; that he had comfortably supported her for years until his death; and since his death she had no means of support, except the use of a house only about half paid for, and that it would cost her now, to live, twenty or thirty dollars per month."

To the introduction of this evidence the defendant objected upon the ground that it was not admissible on the issue joined; but being overruled by the court it excepted.

She also gave the following testimony:

"John Johnson testified that he was acquainted with plaintiff's intestate at the time he received the injury complained of; was a young man about 23 years of age, of good character and unmarried; that he was a good conductor and would, with experience, have made a first-class conductor, and could have earned 3 dollars per day; that at the time he received said injury he was employed as a conductor on a freight train on defendant's road; that witness was conductor on the second train following and saw Gettle about twenty minutes after he was hurt; that a car had passed over his legs, witness did not know how he was hurt, but knows that he died before he reached home; that under the rules of the company, it was the duty of the conductor to examine all cars in his train before taking it from the station and each time the train stopped."

" James Gletner testified that he was a brakesman on Gettle's train; that the train stopped a few hundred yards west of Little Cacapon bridge to wait for time; that when they started Gettle had lighted his lamps, and they were all in place, and they did not miss him until they reached "No. 12," a station about 9 miles distant; that the rear car in Gettle's train was a "coal hopper"—the car in front of the coal hopper was a house car; that the house car might have been a government car, witness thought it was, but did not positively remember that; government cars were about 6 inches higher than other house cars; that at the time they missed Gettle one of the lamps had the wires that enclosed

it bent; witness did not know how or when the wires were bent; that the lamp was fastened with a cord, and that a force sufficient to have so bent the wires would have broken the cord; that when he first saw Gettle, after receiving the injury, he was being carried to his mother's, in Martinsburg; that there was a scar across his forehead, and his legs were broken; that the scar might have been made either from his head coming in contact with the bridge, or upon falling on the ground or track; that Gettle, at the time, had been acting as conductor over a year."

"Frederick Hogey testified that he was a carpenter, and had been for many years in the employment of the defendant, building cars; that he was acquainted with the cars on defendant's road called Government cars; that Government cars were ten and a half or eleven feet high, and were about four inches higher than the highest of the company's cars; some of the oldest cars of the company were a foot lower than the Government cars. Before the war the company had and used a good many of their highest cars; that Government cars, purchased by the defendant, had no bumpers on the end, but had two cast-iron blocks, about three inches apart; that on these cars there was not much of a chance for a conductor to stand, and braking was generally done from the top."

"Theodore Buser testified that plaintiff was over 70 years old and in bad health; that Frederick Gettle, who was her son, supported her, and that she had no means of support since his death, except a house purchased by him, and about one-half paid for, and that it would cost 20 or 30 dollars a month to support her as he did."

The defendant, to support the issue on its part, gave in the following evidence to the jury:

"John Leman testified that he had measured the height of the bridge over the Little Cacapon; that the distance from the top of the rail to the lower edge of the iron across the top, was 15 feet 9 inches; that the bridges on the defendant's road were mostly destroyed during the war, and had been rebuilt since; that the Little Cacapon bridge was re-

built since the war; that the bridges, with one exception, were of the same height; that Government house cars were about eleven feet high."

"Frank Brosens testified that he was an engineer on Gettle's train; rear car was a coal hopper; next was a company's house car, and had a platform at each end, and cast-iron bumpers; that before he passed through Little Cacapon bridge he stopped his train to wait for time, ten or fifteen minutes; that the train passed through the bridge very slowly, when it passed through the bridge, and no occasion for brakers; that it was the duty of the conductors to examine all the cars in their train, before starting."

"John Elliott testified that he was fireman on Gettle's train; the rear car was a coal hopper, and the next a company's house car; he knew it was a house car, because he worked with it at Cumberland."

"Darius Darby testified that he was agent of the defendant; knew the height of cars, by measurement; the cars were as high as Government cars; were not as high as the highest cars of the company, which they had been using for ten years; witness saw the car, next to the coal hopper, in Gettle's train; it was a house car and had bumpers and platform, and was not as high as the company's highest cars."

"John Poisel testified that he was a conductor of the train behind Gettle's; that Gettle was a careful conductor; that almost any man could sit on top of the highest cars and ride through Little Cacapon bridge with safety, but that witness knew one man who could not—he was too tall; that if a man were on his knees he might have to dodge his head."

Defendant also submitted, as evidence to the jury, the following rules and orders, governing·conductors and brakesmen, which were admitted to be in force at the time the injury was received:

"DUTIES OF FREIGHT TRAIN CONDUCTORS.

"Sec. 1st, page 60. Conductors must report themselves daily, and be ready for duty at least one hour before the time specified for starting, during which time they must be

employed in examining their trains, brakes, couplings and bolt pins, always providing an extra number of the latter, together with a chain, before starting. The conductor must know, beyond a doubt, that the cars are all in good running order before his train is despatched from the station.

" Sec. 6th, page 61. Every train running must be provided with two red flags by day, and two red lanterns by night, to be used as signals, and every conductor must provide himself with all such signals, which he must use in giving notice to any train approaching from either direction, as the circumstances of the case may require. The conductor, in all cases, must occupy the rear end of the train, with the lanterns and flags at his hand, or by his side, so that no time may be lost in giving warning to approaching trains.

" Sec 1st, page 15. All train hands in the employ of this company are to devote themselves exclusively to its service. The regular compensation will cover all risk incurred by them, or liability to accident from any cause, while in the service ; and when disabled from sickness, or other cause, the right to claim compensation will not be recognized. Any allowance by the company, in such case, will be as a gratuity only."

The defendant moved the court to set aside the verdict and grant a new trial on the ground of its being against law, contrary to the evidence and without evidence to support it. The motion was overruled, and the testimony certified.

*G. H. Lee* for the plaintiff in error.
*Stanton & Allison* for the defendant in error.

BERKSHIRE J. The first question for our consideration arises on the demurrer to the declaration. The action is trespass on the case, and founded on the act of the 9th of November, 1863, p. 113, for damages for the killing of plaintiff's intestate, Frederick Gettle.

The objection to the declaration is, that it fails properly to aver that the decedent had a widow or next of kin, for whose benefit alone it is claimed the action could be maintained.

The second section of the act provides that the action shall be brought by and in the name of the personal representative of the decedent, and that the amount recovered shall be for the *exclusive* benefit of the *widow and next of kin of such deceased person*, and that the jury may give such damages (not exceeding 5,000 dollars) as they shall deem fair and just with reference to the pecuniary injury resulting from such death to the wife and next of kin.

It is very manifest, therefore, that the widow and next of kin constitute the very pith and essence of this action, and that if there be none such the action will not lie. And this being the case, it follows, as it seems to me, that it should be distinctly and positively averred in the declaration that the decedent had, in fact, a widow or next of kin, *or both*, (as the case might be), and I think that, in order to enable the defendant to meet this question fairly, correct pleading would require that such widow and next of kin should be accurately set forth and designated by name in the declaration, and that the damages claimed were for the aid of and sustained by such widow and next of kin. There is no such positive and sufficient averment of a widow or next of kin found in the declaration in this case, and I think it was bad for this omission, and that the demurrer to it ought to have been sustained. 1 Wash., 135; 1 Call, 71; 3 Munf., 255; Lucas vs. N. Y. Central Railroad Company, 21 Barbour, 245.

It appears that immediately upon the overruling of the demurrer to the declaration, the cause was tried, and the jury sworn to try the *issues joined*, &c. But it does not appear from the record that there was any plea filed to *this*, the amended declaration, nor any issue raised under it, and was therefore error to swear the jury to try the issue joined when there is no such issue or *any* issue in the cause to be tried by a jury. 2 Call, 315; 1 H. & M., 161; 4 Rand., 172; 9 Leigh, 422.

A further error complained of is the overruling of the defendant's objection to the evidence of Theodore Buser, a witness introduced on behalf of the plaintiff. This evi-

dence related to the maintenance of the plaintiff, Elizabeth Gettle, furnished to her by her intestate in his life time, as well as to what it would cost to support her since his death. It is clear that the testimony could only be admissible on the ground that she was the widow, or one, or all of the next of kin of the decedent. From the record it appears that the deceased was the son of, lived with and supported the plaintiff, and that he was only 23 years of age at the time of his death, and was unmarried. From this I think it might be fairly implied that the plaintiff was in fact one of the next of kin of her intestate, and, therefore, the testimony was properly admitted.

The remaining error assigned is to the overruling of the defendants' motion to set aside the verdict, as being contrary to evidence, and grant it a new trial.

It seems to me the court erred in not sustaining the motion.

I am, therefore, of opinion that the judgment should be reversed, with costs to the plaintiff in error here, and the cause remanded to the circuit court for further proceedings, according to the principles indicated therein, when, if requested, the plaintiff have leave to file an amended declaration.

The other judges concurred.

JUDGMENT REVERSED.