# CHARLESTON.

## SEARLE *v.* RAILWAY CO.

*(GREEN, JUDGE, absent.)

Submitted January 24, 1889.—Decided March 9, 1889.

1. RAILWAY COMPANIES— DAMAGES—DECLARATION—DEMURRER —SURPLUSAGE.

In an action under our statute Code, c. 103, to recover damages for causing the death of a party the declaration is not demurrable, simply because it names the widow and children of the defendant and avers, that the damages claimed by the plaintiff accrued to them. Such parts of the declaration will be treated as surplusage. (p. 372.)

2. RAILWAY COMPANIES—DECLARATION.

The declaration in an action under said statute, which avers, that the decedent was killed by the oversetting and throwing down of the railroad car, in which he was at the time being carried by the defendant as a passenger, and that said oversetting and throwing down of the car were caused by the negligence of the defendant, is not demurrable, on the ground that the allegation is too general. (p. 373.)

3. RAILWAY COMPANIES—NEGLIGENCE—INSTRUCTIONS.

The following instructions are not erroneous in an action brought under said statute to recover damages for the causing of the death of a husband and parent by the negligence of a railroad company : "(2) The law in tenderness to human life and limbs holds railroad companies liable for the slightest negligence and compels them to repel by satisfactory proofs every imputation of such negligence. When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require, that they be held to the greatest possible care and diligence. (3) The Kanawha & Ohio Railway Company as a common carrier of passengers was bound to exercise the utmost degree of diligence and care in safely transporting Daniel Searles upon his journey. (4) The slightest neglect, against which human prudence and foresight might have guarded, and by reason of which his death may have been occasioned, renders such company liable in damages for such death. (5) Said railroad company is held by the law to the utmost care not only in the management of its trains and cars but also in the structure, repair and care of the track and bridges and all other arrangements necessary to the safety of passengers. (6) The jury are instructed that in estimating the pecuniary injury they

*On account of illness.

may take into consideration the nurture, instruction, and physical, moral, and intellectual training, which the children would have received from their father. (7) The jury are instructed that while they must assess the damages with reference to the pecuniary injuries sustained by the distributees in consequence of the death of Daniel Searles, they are not limited to the losses actually sustained at the precise period of his death, but may include also prospective losses, provided they are such as the jury believe from the evidence will actually result to the distributees as the proximate damages arising from the wrongful death." (p. 374.)

*G. S. Couch* for plaintiff in error.

*Gunn & Gibbons* for defendant in error.

SNYDER, PRESIDENT:

Action of trespass on the case commenced in June, 1886, by T. M. Harbour, as administrator of Daniel Searles deceased, against the Kanawha & Ohio Railway Company in the Circuit Court of Mason county. There was a demurrer to the declaration, which was sustained ; and then an amended declaration was filed, to which and to each count thereof the defendant demurred, and this demurrer was overruled. Issue was joined on the plea of not guilty and upon two special pleas denying, that the plaintiff was or ever had been administrator of Searles. The action was tried by jury, and a verdict returned for the plaintiff for $3,000.00, which the defendant moved the court to set aside; but the court overruled this motion and entered judgment on the verdict, and the defendant obtained this writ of error.

The defendant in error complains, that the Circuit Court erred in sustaining the demurrer to the original declaration. The record shows, that, after the court sustained this demurrer, the plaintiff was given leave to file and amended declaration, which he afterwards did without objection. This operated as a waiver of any objection to the action of the court in sustaining said demurrer, an the amended declaration, when filed, superseded the original and become the only declaration in the case. It is too late to make an objection of this character for the first time in the appellate court.

The plaintiff in error, the railway company, insists, that the court erred in overruling the demurrer to the amended declaration : *first*, because each of its three counts are bad,

for the reason that they allege the damages claimed by the plaintiff accrued to the widow and children of the intestate; and *second*, because the second count is bad, for the further reason that it fails to aver, how and in what respect the defendant was negligent.

1. Each count of the declaration after alleging, that the plaintiff's intestate was killed by the negligence of the defendant while being carried as a passenger upon one of its trains, avers, that by reason of the premises the said widow and children of the decedent (naming each of them) have sustained damages to the amount of $10,000.00. And in its general conclusion the declaration avers, that by reason of the matters contained in the first, second and third counts and by force of the statute an action has accrued to the plaintiff, as administrator as aforesaid, to have and demand from the defendant damages to the amount of $10,000.00. In *Railroad Co. v. Gettle*, 3 W. Va. 376, which was an action brought under chapter 98, Acts 1863, it was held, that the declaration was fatally defective, for the reason that it failed to aver, that the decedent had a widow or next of kin. After that decision the statute was changed so as to provide, that the amount recovered shall be distributed to the parties entitled under the law to the personal estate of a decedent, but it shall not be liable for his debts, instead of providing, as the statute then did, that the amount recovered shall be for the exclusive benefit of the widow and next of kin of the decedent. Since this modification of the statute it has not been regarded as essential, that the declaration should aver, that the decedent had a widow or next of kin, or mention his distributees by name or otherwise, and I think such is the proper interpretation of the statute. *Railroad Co. v. Wightman*, 29 Gratt. 431. But while it is not necessary to name the distributees and allege, that the action is for their benefit, still I do not think the making of such averment will be fatal to the declaration, but that it ought to be treated simply as surplusage. It seems to me, this should be so treated under the Code c. 125, s. 29, which declares that on demurrer no defect shall be regarded, unless it be so essential, that judgment can not be given according to law and the very right of the case. I think therefore this objection is not well taken.

2. The other ground relied on in support of the demurrer is, that the second count of the declaration is too general, in that it fails to aver, how or in what manner the defendant's car was overset and thrown down, whether by a defect in the car, the track, or by the carelessness of its employes or otherwise. The averment is in substance as follows : The defendant not regarding its duty conducted itself so carelessly, negligently and unskillfully, that by reason thereof and the default of the defendant and its servants and for the want of due care and attention the car, in which the said Searles was being carried, was overset and thrown down, by means whereof the said Searles was greatly wounded and injured, and by reason thereof he died. Under the decision of this Court in *Blaine* v. *Railroad Co.*, 9 W. Va. 252; *Hawker* v. *Railroad Co.*, 15 W. Va. 628 ; and *Bern* v. *Coal Co.*, 27 W. Va. 285,—we must overrule this objection to the declaration and hold, that its averments are sufficient. It avers, that the decedent was killed by the oversetting and throwing down of the car, and that this was caused by the negligence of the defendant. This, it seems to me, is a sufficient averment of the negligent act, which caused the injury, under the law of this state as modified by our statutes, though it may not be such as required by the rigid rules of pleading of the common law. 2 Thomp. Neg. 1246 § 26; *Railroad Co.* v. *Dunlap*, 29 Ind. 426 ; *Railroad Co.* v. *Harwood*, 90 Ill. 425. The demurrer to the declaration was therefore properly overruled.

It is further assigned as error by the plaintiff in error, that the court improperly refused to instruct the jury, that the evidence of the plaintiff was insufficient to prove, that the plaintiff was or ever had been legally appointed administrator of Daniel Searles. In order to prove such appointment the plaintiff introduced an order of the County Court of Putnam county dated March 15, 1886, in those words: "The clerk of this court presented here a list of fiduciary appointments by him made in vacation since the first day of the last regular term of this court, which list being seen and inspected by the court, it is ordered, that each of the appointments be, and the same is hereby, confirmed." In connection with this order the plaintiff read in evidence a

list from which it appears, that the plaintiff was appointed administrator of said Daniel Searles on February 27, 1886. It is contended, that this was simply a private list of the clerk, and that the order of confirmation referred to this list and did not therefore confirm any appointment, of which the clerk had made a record as required by the statute. It would certainly have been better, and more formal for the order of the County Court to show, that the clerk had reported, that is, exhibited to the court the record of the appointments made by him in vacation; but in the absence of any fact tending to show, that the list referred to in said order was not the recorded list of the clerk, it seems to me, this Court ought to presume, that it was the recorded list, and that the order of confirmation referred to the appointments made and recorded by the clerk. To hold otherwise would be extremely technical and, I think, unwarrantable.

The court gave to the jury eight instructions at the instance of the defendant and the same number at the request of the plaintiff. To the giving of the latter or any of them the defendant objected; but no objection is made to any of them in this Court except Nos. 2, 5, 6, and 7, which are in these words:

"(2) The law in tenderness to human life and limbs holds railroad companies liable for the slightest negligence and compels them to repel by satisfactory proofs every imputation of such negligence. When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require, that they be held to the greatest possible care and diligence. Any negligence or default in such cases makes such carriers liable in damages under the statute."

"(5) Said railroad company is held by the law to the utmost care not only in the management of its trains and cars but also in the structure, repair and care of the track and bridges and all other arrangements necessary to the safety of passengers.

(6.) The jury are instructed, that in estimating the pecuniary injury they may take into consideration the nurture, instruction and physical, moral and intellectual training, which the children would have received from their father.

(7.) The jury are instructed, that, while they must assess the damages with reference to the pecuniary injuries sustained by the distributees in consequence of the death of Daniel Searles, they are not limited to the losses actually sustained at the precise period of his death but may include also prospective losses, provided they are such as the jury believe from the evidence will actually result to the distributees as the proximate damages arising from the wrongful death."

Of the said instructions, Nos. 2 and 5 are literal copies of instructions given and approved by the appellate court in *Railroad Co.* v. *Wightman*, 29 Gratt. 431. In reference to these instructions the court in that case at page 445 says: "We do not deem it necessary to enter into any discussion of the propositions of law involved in these instructions. It is sufficient to say that they are fully sustained by the elementary writers, and by the opinions of the most respectable courts in this country. The decisions on this subject are given in Whart. Neg. §§ 627, 661, inclusive; also section 422, and the notes to these sections; Redf. Carriers & Bailees § 346; *Farish* v. *Reigle*, 11 Gratt. 697."

It is however earnestly insisted by the counsel for the plaintiff in error, that the concluding sentence of said instruction No. 2, to-wit: "Any negligence or default in such cases makes such carriers liable in damages under the statute,"—is unquestionably wrong, because to justify a recovery two things must concur: *first*, negligence by the defendant; and *second*, such negligence must have contributed to the injury sustained. It is certainly true, that it is the conjunction of the negligence and the injury, which creates the tort. Mere negligence does not become an actionable wrong, unless the other element is found in the same case, namely, an injury or damage suffered in consequence of the negligence or wrong. Cooley on Torts, 62; 2 Greenl. Ev. § 256. It is therefore, apparent that this sentence taken alone does not propound a correct legal proposition; but, if considered in connection with the other instructions submitted with it, in one of which the jury were told, that, if they find from the evidence, that the negligence of the defendant in nowise contributed to or occasioned the accident,

then they must find for the defendant, I do not think it so objectionable as to warrant a reversal of the judgment. Instructions Nos. 6 and 7 are substantially the same as, and were evidently copied from, two instructions, which were fully considered and approved by the court of appeals of New York in *Tilley* v. *Railroad Co.*, 29 N. Y. 252. The New York statute, under which that case was determined provided, that "the jury may give such damages, as they shall deem a fair and just compensation not exceeding $5.000.00 with reference to the pecuniary injuries resulting from such death to the wife or next of kin of such deceased person." Laws 1849, p. 388. It was therefore contended in that case, that the recovery must be limited and confined to a pecuniary loss flowing necessarily from the death. And in support of that view counsel cited many English and American cases, in which it was held, that the damages must be assessed with reference to the pecuniary loss resulting from the death of the person injured, and that neither the physical pain of the deceased nor the mental sufferings of the surviving family can be taken into the estimate. See also Shear. & R. Neg. § 610; Field, Dam. § 630, and cases cited. The court in a unanimous opinion, says:

"The charge of the judge was explicit, that the damages must be limited to pecuniary injuries; and he said, that in estimating them they had a right to consider the loss, that is the pecuniary loss, which the children had sustained in reference to their mother's nurture and instruction, and moral, physical and intellectual training. I think this does not imply, that the children are necessarily and inevitably subjected to such loss, but leaves it to the jury to determine, whether any such loss has been in fact sustained, and, if so, the amount of such loss. This is the fair scope and meaning of the charge, and, if it was not sufficiently explicit, it should have been made so by a direct request for such purpose. This understood, I regard it as unexceptionable." *Tilley* v. *Railroad Co.*, 29 N. Y. 285. * * * * "Nor do I think it was erroneous to instruct the jury, that, while they must assess the damages with reference to the pecuniary injuries sustained by the next of kin in consequence of the death of

Mrs. Tilley, they were not limited to the losses actually sustained at the precise period of her death, but might include also prospective losses, provided they were such as the jury believe from the evidence would actually result to the next of kin as the proximate damages arising from the wrongful death,"—citing *Tilley* v. *Railroad Co., Tilley* v. *Railroad Co.,* 29 N. Y., 285, 24 N. Y. 473-477.

The foregoing views fully sustain the instructions here complained of, and, I think, they are consonant with reason and the purpose of the statute; and, if correct in that case, they are more truly so in the case at bar, because our statute does not like the New York statute, limit the compensation "to the pecuniary injuries resulting" *etc.,* but it provides: "In every such action the jury may give such damages, as they shall deem fair and just not exceeding ten thousand dollars." Code 1887, c. 103, s. 6. It will thus be observed, that our statute does not in terms limit the jury to giving compensation for pecuniary injuries, though such is perhaps its purpose and implied meaning; but still, as it is not express, the limitation ought not to be applied strictly.

It is further contended, that instruction No. 6 was improper, because there was no evidence tending to support it. This is a mistake. There was evidence submitted to the jury, that the decedent was forty two years old, made his living by days' work and laboring on his farm, had a wife and nine children, all of whom were living at the time of the trial; the oldest child was nineteen years of age, and the youngest sixteen months; that he was a church member, moral, religious and industrious in his habits, a kind husband and parent and had been sending his children to school. As was said by this court in *Dimmey* v. *Railroad Co.,* 27 W. Va. 32, 57, quoting from *Tilley* v. *Railroad Co.,* 29 N. Y. 286: "Within the statute as to amount and the species of injuries sustained the matter is to be submitted to the sound sense and justice of the jury. They must be satisfied, that pecuniary injuries resulted. If so satisfied, they are at liberty to allow them from whatever source they actually proceeded which could produce them. If they are satisfied, from the history of the family or the intrinsic probabilities of the case, that they were sustained by the loss of bodily care

or intellectual culture or moral training which the mother had before supplied, they are at liberty to allow for it. The statute has set no bounds to the sources of these pecuniary injuries. If the rule is a dangerous one, and liable to abuse, the legislature, and not the courts, must supply the corrective." If it was proper for the jury to consider these sources of injury, surely the defendant could not be prejudiced by having the jury instructed in respect to them. The instruction was therefore not improper.

A new trial was not asked on the ground that the verdict was contrary to the evidence, but only upon the ground that the court mis-directed the jury. Having determined, that there was no error in the instructions to the jury, we must hold, that the motion for a new trial was properly overruled. If we had been asked to set aside the verdict on the ground, that it was not sustained by the evidence, we should have refused to do so, because the evidence, to say the least of it, does tend to support the verdict, and, this being a case involving negligence, which is a mixed question of law and fact, and one peculiarly within the province and control of the jury, we would not disturb the verdict, unless the facts distinctly showed, that there was no negligence. *Washington* v. *Railroad Co.*,17 W. Va. 190; *Johnson* v. *Railroad Co.*, 25 W. Va. 570.

Having found no error, for which the judgment of the Circuit Court should be reversed, I am of opinion, that said judgment should be affirmed.

Affirmed.

# CHARLESTON

