# CHARLESTON.

## GREGORY'S ADM'R v. OHIO RIVER R'D CO.

*Submitted June 10, 1891.—Decided February 1, 1893.*

1. NEW TRIAL—BILL OF EXCEPTIONS—WAIVER—EVIDENCE.

A motion for a new trial should indicate, in a way sufficient to call the attention of the court to them, the grounds for such new trial, unless the point has been made the subject of a bill of exceptions. Where it is claimed that evidence has been improperly admitted, and an exception noted, but no bill of exceptions taken, and the record states that the motion for new trial was based on certain specific grounds, not naming the admission of such evidence, that exception will not be considered in the appellate court, but will be treated as waived. (p. 609.)

2. RAILROAD COMPANIES—MASTER AND SERVANT—EMPLOYER AND EMPLOYE.

A rule of a railroad company will not be binding on its employes unless they have knowledge of it. (p. 613.)

3. RAILROAD COMPANIES—PRINCIPAL AND AGENT—MASTER AND SERVANT—EMPLOYER AND EMPLOYE.

The test of the liability of a principal or master for the torts of his agent or servant is whether the latter was at the time acting within the scope of his authority in the business of the principal or master, and not whether the act was done in accordance with his instructions. If such act be done within the scope of authority, and while the agent or servant is engaged in his employer's business, the latter is bound for it. (p. 614.)

4. ARGUMENT OF COUNSEL—DISCRETION OF COURT—REVERSAL.

Whether counsel, in argument before a jury, shall read law from law books and reported cases, and comment thereon, is within the discretion of the court, subject to review in case of abuse of discretion. If the law read be good law, and relevant to the case, it is clearly not a ground of error. If bad law, or irrelevant to the case, and calculated to mislead the jury, yet, if the court has given instructions correctly stating the law on the subject, it would not be reversible error; but, in the absence of such instructions to counteract the danger, it would be reversible error. (p 618.)

V. B. ARCHER for appellant cited 17 W. Va. 190; 1 Den. 570; 3 Rob. (New) Pr. 530; 1 Chitt. Pl. (16th Ed.) * 256; 5 W. Va. 10; 30 Gratt. 810; 1 Chitt. Pl. 406 (note); 11

Price, 235; 1 Saund. Pl. & Ev. 510; 30 W. Va. 798, 811, 818; Step. Dig. Ev. 15; Pat. R'y Ac. 420; 1 Greenl. Ev. (13th Ed.) § 52; 32 W. Va. 370; 54 Wis. 208; 58 N. Y. 391; 96 N. Y. 264; 2. Wash. 281; Hill, New Tr. (2nd Ed.) 407; 2 H. & M. 55; 8 Am. & Eng. R'd Cas. 177; 2 Thomp. Neg. 885; 33 N. Y. 369; 13 S. W. Rep. 982; 77 Tex. 228; 16 Pac. Rep. 144; 30 N. J. L. 460; 53 Ill. 117; 69 N. Y. 170; 47 N. Y. 274; 19 Wend. 343; 39 N. Y. 381; 5 Munf. 483; 6 Car. & P. 501; 4 Min. Inst. 875 and cas. cited; 3 W. Va. 566; 14 W. Va. 100; 6 W. Va. 258; 35 N. W. Rep. 334; 13 N. E. Rep. 844; 24 W. Va. 613 and cas. cited; 2 Gratt. 339; 9 Gratt. 501; 29 Gratt. 431; 32 Gratt. 394; 33 W. Va. 434; 27 W. Va. 141; 33 W. Va. 438; 15 Gratt. 453; 1 Thomp. Tr. § 941; Id. § 947; 23 Ill. 357; 11 Mich. 501; 39 N. W. Rep. 861; 72 Cal. 248; Proff. Jur. Tr. § 253; 44 Cal. 70; 26 N. E. Rep. 1048; 10 N. E. Rep. 528; 56 Tex. 375; Id. 452; 66 Mich. 277; 101 N. Y. 520; 137 Mass. 243; 17 Am & Eng. R'd Cas. 272; 139 Mass. 587; 41 Ohio St. 338; Id. 388; 14 R. I. 357; 18 Fed. Rep. 239; Id. 243; 45 N. W. Rep. 807; 15 R. I. 95; 4 So. Rep. 333; 65 Am. Dec. 222; 71 Am. Dec. 298; 140 Mass. 245; 122 U. S. 189; 27 W. Va. 285, 296; 29 W. Va. 98; Wood Mas. & Serv. §§ 326, 328; 26 N. E. Rep. 431; 139 Mass. 580; 83 Va. 375; 86 Va. 390; 45 Mich. 212; 105 N. Y. 26; 14 Fed. Rep. 564; 18 Fed. Rep. 282; 23 N. E. Rep. 827; 26 N. E. Rep. 994; 60 Md. 395; 51 Md. 47; 41 Md. 298; 32 Md. 420; L. R. 2 Ex. Div. 389; 38 Minn. 117; 61 Tex. 196; 86 Va. 390; 83 Va. 375; 59 Tex. 19; 105 Ind. 151; 79 Me. 397; 70 Ga. 674; 68 Tex. 694; 71 Ia. 717; 3 Gra. & W. New Tr. 1044; 50 Tex. 371; 20 Tex. 794; 7 W. Va. 54; 11 W. Va. 703; 8 Gratt. 637; 22 Gratt. 946; 20 Gratt. 296; 7 Leigh 608; 27 Gratt. 313; 17 W. Va. 562; 29 W. Va. 410; 4 Min. Inst. 758; 11 S. E. Rep. 716.

EWING, MELVIN & RILEY for defendant in error cited 30 W. Va. 798; 15 W. Va. 628; 11 W. Va. 1; 5 W. Va, 10; 20 W. Va. 23; 22 W. Va. 780; 4 Min. Inst. 728; 6 W. Va. 364; 32 W. Va. 370, 378; 6 W. Va. 274, 284; 29 Gratt. 431; 32 Gratt. 394; Id. 370; 27 W. Va. 75; Patt. Acc. §§ 107, 108, 109; Bl. Pl. Acc. Cas. 104; Proff. Ju. Tr. § 251;

Pow. App. Pro. 321, 398; 16 W. Va. 308; 23 W. Va. 229; 12 W. Va. 116; Hill. New Tr. 380; Id. 375; Id. 393; Id. 395; Id. 494.

BRANNON, JUDGE:

W. D. Gregory was a section hand in the employ of the Ohio River Railroad Company and was killed by a train on that railroad; and in an action by his administrator in the Circuit Court of Tyler county there was judgment against the company; and it brings the case here.

The first error assigned is that the court overruled a demurrer to the declaration. The first count alleged in effect that the company was running a train and was under duty to run the train with care and circumspection, and that disregarding its duty it so carelessly and negligently ran the train that it collided with a hand-car, on which said Gregory was lawfully and with care proceeding and travelling upon said railroad, whereby he was hurt and wounded, whereby and by reason of the carelessness and negligence and wrongful conduct of the defendant he died.

It is alleged against this count, that it does not show by what right or for what purpose Gregory was upon the hand-car; that it is not stated whether he was a passenger or servant; and that it does not appear that the defendant owed him any legal duty.

Suppose the deceased were a servant, passenger or even trespasser. If the train was, as charged, carelessly and negligently driven upon him, it would be actionable. Even a trespasser on a track may recover for willful gross negligence. The allegation of negligence is in general language without specification of wherein the negligence consisted, as it may be under *Hawker* v. *Railroad Co.*, 15 W. Va. 628; but it charges negligence as the cause of the injury. It is said that the second count is open to the same objection as the first. But it is not, for it expressly alleges, that deceased was upon the hand-car "by, the license, permission and direction of the defendant," and was so by its negligence killed.

The third count alleges that Gregory was a servant of the defendant, and was negligently, carelessly and improp-

erly required by it to do certain work upon its railroad, and to proceed and travel upon a hand-car of the defendant upon its railroad, and was run over by a train, *etc.* It is urged that the count ought to state in what employment he was, and ought to specify his duties, so that we may say whether it was a duty to ride upon the hand-car over the road. We think this is requiring too great particularity. If he was a servant, and was commanded to labor on the road, and to go in a hand-car, is not that enough, without specifying his employment or the character of his labor?

The objection to the fourth count is substantially the same as that to the third. This fourth count is the same as the fifth in *Criswell* v. *Railroad Co.*, 30 W. Va. 798 (6 S. E. Rep. 31) which was approved, and it did not state the service in which the deceased was a servant otherwise than does the count in this case. There is no error in overruling said demurrer.

The next assignment of error is in admitting certain evidence alleged to be inadmissible. The certificate of the evidence given upon the trial shows that the defendant objected to this evidence, that his objection was overruled, and that he excepted; but there is no bill of exceptions taken to the rulings. The motion for a new trial states that the ground, on which such new trial was asked, was that the verdict was contrary to law and evidence and the instructions, not specifying the admission of such evidence as a ground for new trial.

Now, if a bill of exceptions for the admission of such evidence had been taken, it would both show that the party had not waived the point, and that the judge's attention had been called to review his action upon the evidence; or, if the motion for new trial had stated that it was based on the improper admission of such evidence, then we might say that the statement in the certificate of evidence, that the party objected and excepted to its admission would be sufficient without a formal bill of exceptions.

But where, as in this instance, the motion for a new trial does specify two other grounds, ignoring this one, may we not say it is waived? *Brown* v. *Brown*, 29 W. Va. 777 (2 S. E. Rep. 808) holds that where exception is taken to the

giving or refusing of instructions or to the admission or rejection of evidence, a new trial must be asked, else such exceptions will be regarded as waived. If so, where no bill of exceptions has been taken, ought not the motion for a new trial specify the action of the court in such matters as grounds? Especially where, as in this instance, that motion does specify other grounds, is there not reason to say that the exception as to the admission of the evidence is ignored? Trials sometimes last weeks, and the court has ruled on many points of evidence and other things; and, on a motion for a new trial, is it to go over all these things without being asked? Ought not its attention be called to these transactions? Fairness to the judge and to the adverse party requires this.

In the opinion in *Searle* v. *Railway Co.*, 32 W. Va. 370 (9 S. E. Rep. 248) and *Danks* v. *Rhodehaver*, 26 W. Va 284, it seems to be recognized as law that the motion for a new trial should tell the court on what ground it is asked. In 2 Thomp. Trials, § 2754, it is stated that in many states the practice requires a specification of the reasons or grounds for a new trial; and, as to the admission or exclusion of evidence as a ground, section 2756 states that the motion "must clearly designate or specify, with reasonable certainty, such evidence." 16 Amer. & Eng. Enc. Law 641.

In Indiana even a specification that the court erred in admitting evidence offered by defendant, objected to by plaintiffs, was held too general. *Grant* v. *Westfall*, 57 Ind. 121. So in *Hoey* v. *Hoey*, 36 Conn. 386, and *Edmonds* v. *State*, 34 Ark. 720, such general specifications were held insufficient. *Helm* v. *Coffey*, 80 Ky. 176; *George* v. *Jennings*, 4 Hun. 66. In *Meaux* v. *Meaux*, 81 Ky. 475, under a statute declaring for what grounds a new trial should be granted, the ground assigned was "because of error of law occurring on the trial," and it was held too general.

It seems to me that reason, convenience, and public justice conspire to sanction this rule. But for it a judge would have to retrace his steps, and grope through the infinite matters arising in a long trial—his thought not being called to review particular subjects, and often failing to review important ones; and thus error would be committed, and jus-

tice defeated. Rule and, I think, proper practice should require reasonable specification.

After a trial is over, it is not simply a matter of fairness to the judge, but one vitally concerning the administration of justice in avoiding error and appeals, and consequent protraction of litigation, that there should be opportunity to review the points passed upon in the trial. The motion for a new trial affords this opportunity. It is the halting place for review. Should not the party complaining of error tell the court what is the error he complains of, unless by bill of exceptions he has already done so ? Should he not say, at least, that it is in the admission or rejection of certain evidence—pointing out the evidence ? At any rate should he not tell the court in a general way, that it is for the rejection or admission of evidence, and thus call the court's attention to that head, so that it may go back and review rulings under that head ? At any rate, further, should he be allowed to say to the court that he bases his motion on certain specified grounds—that is, that the verdict is contrary to the evidence and law, and on account of instructions— never hinting that it is for the admission of improper evidence, which covers many points along the way of the trial and thus mislead the court and the other party, and for the first time in this Court rely upon that ground ?

Reference to the late work of Elliott on Appellate Procedure (sections 827 *et seq* and section 795) will sustain the views here expressed, and go further; for his text shows that even a general specification will not do, but there must be a specific designation of the evidence, which we are not required to decide on in this case, as here there is no reference to the admission of evidence as a ground for new trial. True, the text of Elliott may be said to refer to Indiana and other statutes; but those statutes simply define, under general heads, the grounds for granting new trials, and require the application to be in writing, and the courts hold specification in particular of the error complained of as necessary.

Here we have no statute giving such grounds, but the common-law gives them. But this does not do away with the propriety of specifying on the motion, at least generally,

the ground, even if more particular specification be not required; and I see no reason against, but much reason for, requiring a reasonable specification; and certainly a party ought not to be permitted to assign some specific grounds, ignoring others, and in this Court rely on such others, unless he had taken a bill of exceptions to them.

The next assignment of error is for the refusal to give certain instructions as asked, and giving them with modification. The plaintiff having shown that Gregory was a section hand working under a foreman, and subject to his orders, and that on Saturday night there was a severe wind and rain-storm, and that the rules of the company required that after storms or rains likely to obstruct or injure the track the foreman should pass over it to inspect and repair injuries, whether it was Sunday or not, and that the foreman required Gregory to go over the track with him upon a hand-car, and that they found a culvert washed out, and repaired it, and were going to a station to report that the track was safe, but care was required, when an extra or excursion train collided with the hand-car at a curve, killing Gregory, and that this was upon a Sunday. The defendant then gave in evidence a rule of the company forbidding foremen to run hand-cars on Sunday without special permission from the road-master, claiming that both the foreman and Gregory were acting in violation of this rule, and that the foreman was not acting for, and could not bind, the company for so running the hand-car, or ordering Gregory to go upon it; and the defendant asked certain instructions pertinent to this evidence and contention.

Instruction No. 3, in substance, would tell the jury that if the foreman, in violation of the rule forbidding him to run hand-cars on Sunday, took out the hand-car on Sunday, and Gregory's death was caused by collision of the locomotive with it, they should find for the defendant. The court added to the instruction, at its close, the words: "Provided the jury further believe, from the evidence, that Wesley Drummond Gregory, at the time, had knowledge of said rules of the defendant, and also knew that said section foreman, at the time, was acting in violation of said rules."

Here I must refer to the case of *Criswell* v. *Railroad Co.*, 30 W. Va. 798 (6 S. E. Rep. 31). It establishes that a foreman of a gang of section hands is not a fellow servant with those hands, but the agent or representative or vice-principal of the company ; and that, if through his neglect one of them is injured, the company is liable therefor. I know of no law requiring those who are merely laborers on a railroad, subject to the order of their foreman, to notice the rules of the company, especially rules not directly bearing upon or directing them. Certain rules are to be administered and enforced by certain agents of the company. It was the duty of this foreman to know and to execute this rule against using hand-cars on Sunday ; and, before we can say that the plaintiff's action shall be defeated by the mere existence of that rule, we must find that he had knowledge of it. Just such addition to an instruction was made in *Criswell* v. *Railroad Co.*, 30 W. Va. 798 (6 S. E. Rep. 31) and approved by this Court.

A rule of the company does not bind the employe, as public law binds every man. He must have notice or knowledge of it. Wood, Mast. & Serv. § 776 ; *Fay* v. *Railway Co.* 30 Minn. 231 (15 N. W. Rep. 241) ; *Railway Co.* v. *Leverett*, 48 Ark. 333 (3 S. W. Rep. 50) ; *Criswell* v. *Railroad Co.* 30 W. Va. 798 (6 S. E. Rep. 31).

But an effort is made to distinguish this case, as regards this matter, from the Criswell case, on the ground that in that case the hand-car was not out on Sunday, and was clearly upon the road, not in violation of the rules, but in the course of regular work, whereas here the foreman had it upon the road in direct violation of the rules, and was not, therefore, to be considered the agent or representative of the company as to this act.

To assent to this contention would be to draw a very refined distinction. This foreman is the agent of the company, at all times, to overlook and keep the track in repair, and has possession and control of this hand-car to do that work, and he commands these hands in the execution of that work, and in the very use of the hand-car, and he is engaged in this work, using this hand-car, and one of his hands is injured, say by his negligence ; and the prop-

osition is that the principal is not liable, because he for- bade the foreman to use the car that day.

That proposition can not be maintained. Why? Because the test of liability of the principal is not whether the agent was authorized to do the particular act which constitutes the negligence or causes the injury, or whether it was done in violation of the principal's orders, but whether it was done while he was engaged in his principal's business, within the scope of his authority. The test is whether the act was done in the prosecution of the master's business, not whether it was done in accordance with his instructions.

Story, Ag. § 452, tells us that the principal is ";liable to third persons in a civil suit for frauds, deceits, concealments, misrepresentations, torts, negligences, and other misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize, or justify, or participate in, or indeed, know of, such misconduct, or even if he forbade them, or disapproved of them. In all such cases the rule applies, *respondeat superior*, and it is founded on public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of the agency." And he adds that "the master is liable for the wrong and negligence of his servant, just as much when it has been done contrary to his orders, and against his intent, as he is when he has co-operated in or known of the wrong."

Mr. Justice Erskine states law pointedly applicable to and illustrating this case: "When the master has intrusted the servant with the control of his carriage, it is no answer that the servant acted improperly in the management of it. If it were, it might be contended that if a master directs his servant to drive slowly, and the servant disobeys, and drives fast, and through his negligence occasions an injury, the master will not be liable. But that is not the law. The master will be liable in such a case, and the ground is that he has put it in the servant's power to mismanage the carriage, by intrusting his servant with it."

These principles of the law of principal and agent, or master and servant, are elementary, and universally recognized. Smith, Mast. & Serv. 52; Mechem. Ag. § 734; Wood, Mast. & Serv. § 279; Cooley, Torts, 632; *Higgins* v. *Railroad Co.*, 46 N. Y. 23. Perhaps the most numerous instances where the master has been held liable are those in which the servant was departing from orders.

The United States Supreme Court, approving these principles in a case exactly similar to this, in the feature that the agent or servant was violating orders, held a railroad company liable where an engineer running a locomotive was forbidden to run on a particular track, where the accident happened, and acted in disobedience of orders. *Railroad Co.* v. *Derby*, 14 How. 468.

An agent of a lumber company piled lumber where his principal had forbidden him to pile it, which fell and wounded a person, and the principal was held liable. *Cosgrove* v. *Ogden*, 49 N. Y. 255.

A clerk in a gun store was prohibited from loading guns in a store, but loaded one to show it to a customer, and the gun was carelessly discharged, injuring a person, and the principal was made responsible. *Garretzen* v. *Duenckel*, 50 Mo. 104.

This act of taking out the hand-car is not, as is contended, an act foreign to, and outside the scope of, the foreman's authority. It is unauthorized action within the scope of authority; misdoing or wrong performance of the business he was employed to transact.

What has been said as to instruction No. 3 applies to defendant's instructions Nos. 4 and 5.

Defendant's instruction No. 6 is, in effect, that if the foreman placed the hand-car on the track, and directed the deceased to go with him to inspect the track, and that though they found the track out of repair, and repaired it, and they started upon the hand-car to a station to give notice that the track had been injured, and that this was on Sunday, and that the foreman was not allowed by the company to put the hand-car on the track for any purpose on Sunday, then the foreman had no right to direct deceased to go upon the hand-car, and the jury must find for de-

fendant.   The objection to this instruction is that it omits
the element of knowledge on the part of deceased that the
foreman was not allowed by the company to·order him out
upon a Sunday, or that a rule forbade the use of the hand-
car on Sunday.

Defendant's instruction No. 9 would have told the jury
that, if the foreman had no authority to place the hand-car
on the track on Sunday, he was not authorized to direct de-
ceased to go upon it, and, if he did so, then the foreman
acted beyond the scope of his authority, and the defendant
would not be liable.   The court modified it by introducing
into it the qualification that, to exempt the company, de-
ceased must have had knowledge that the foreman had no
authority to place the hand-car on the road on Sunday, and
had no authority to order Gregory to go upon it, and that
the foreman was not acting within the scope of his author-
ity.   This modification was not error.   If there was such
want of authority, it must have sprung from regulations of
the company, not from public law, and it was necessary to
fix knowledge of such regulation upon Gregory.   And,
aside from this, the instruction asked draws the legal con-
clusion that the foreman acted without the scope of his au-
thority, simply, and only from the fact that he had no right
to use the hand-car on Sunday, and the fact that he had no
right to order Gregory to go upon it, whereas those facts
would not produce the legal conclusion that he acted with-
out the scope of his authority.   If the foreman acted with-
out the scope of his authority, the company would not be lia-
ble, but that important legal predication in the instruction
comes from facts not supporting or evolving it.

Defendant's instruction No. 10 told the jury that if the
rules forbade the foreman to use the hand-car on Sunday
without special permission from the road master, and he had
not such permission, they should find for defendant; and
the court added: "Provided said Gregory had knowledge of
such rule, and the absence of such special permission from
the road master."   For reasons above stated, there is no
error in this modification.

Error is assigned in the giving of instructions asked by
plaintiff.   Instruction No. 1 is said to hold that damages

might be estimated for loss of earnings of deceased during, not only his life, but also during the lives of his distributees. Of course no damages could be estimated for earnings for time during the lives of the distributees after Gregory's death, and I do not construe the instruction as holding otherwise. It means earnings during the joint lives of Gregory and his distributees; that is, earnings during his life, and no longer, had he not been killed.

As to plaintiff's instruction No. 2. Its points, as modified by the court, are that defendant was bound to take all reasonable precautions for the safety of its track laborers, yet the defendant had right to make reasonable and proper rules and regulations for the conduct of them and its agents, and all servants with a knowledge of such rules and regulations were bound to act in conformity therewith ; and if Gregory's injury was sustained while acting in violation thereof, and such violation was the cause of, or materially and directly contributed to, it, the plaintiff could not recover. I see no error in it to defendant's prejudice. It gives the defendant all the benefit he could ask, based on the rule that hand-cars should not be out on Sunday.

Instruction No. 3 is No. 7 approved in *Searle* v. *Railway Co.*, 32 W. Va. 371 (9 S. E. Rep. 248).

Instruction No. 4 is good, under principles above stated. It is: "The jury are instructed that it is immaterial what rules the defendant had adopted, unless they were brought to the knowledge of plaintiff's intestate."

Instruction No. 5 is: "The jury are instructed that defendant was bound to take all reasonable precautions for the safety of the laborers employed by it on its track, during such employment, including plaintiff's decedent." The objection that is made to it is that it ignores the fact that Gregory was not rightfully employed; referring, I take it, to said rule forbidding the use of hand-cars on Sunday. Other instructions—especially plaintiff's No. 2—gave the defendant the benefit of its theory or contention based on that rule; and this instruction, being a correct general proposition of law, is unobjectionable. As such, it was approved in *Criswell* v. *Railroad Co.*, 30 W. Va. 812 (6 S E. Rep. 31).

The defendant company based its defence largely upon the theory of a violation of the rule forbidding foremen to use hand-cars on Sunday; and the foregoing discussion is based on the concession, in view of instructions as given, that under no emergency could foremen use them on Sunday without the road master's consent. But we do not concur in that position.

Rule 7 provides that "during heavy storms of wind, rain or snow, whether by night or day, by which injury may be done to the track or bridges, section foremen must at once go over their sections, with danger signals, to ascertain if the track be safe for passage of trains."

Rule 78 provides that "foremen must not permit their hand-cars to be used unless they accompany them, nor run them on Sunday, without special permission from road master."

We read both rules together, and we think that when such an emergency arises as that spoken of in rule 7, it is to be considered an exception to rule 78. We can not conceive that it is meant that when a freshet damages a bridge, trestle or culvert, or washes away or sinks the track, the section foreman can not go to it, to inspect the track to. look for such damage, with the hand-car to carry his men and tools, without hunting up the distant road-master. The business interests of the road require it. Public need calls for it. The property and lives of the people call for it. The foreman's section covers seven miles of track. He is bidden to go over it at once. He knows, from the character of the storm and of his track, that he will find breaks and that he will at once need hands and tools. Must the hands walk? Must they carry their tools on their shoulders? If so, passengers' lives would be sacrificed. If damage to passenger or property happen from such defect, the company is liable, because by the use of the hand-car the foreman, charged with inspection, could have found it in time to give warning to the coming train. The foreman owes this duty to his company; his company, to the public.

The next assignment of error is that the court allowed counsel for plaintiff to read certain syllabi in certain decided cases to the jury in argument. The practice in this

matter is this State and in Virginia is very liberal; perhaps too much so, in civil cases, at any rate. In my experience almost anything in a law-book—any law-book—is allowed to be read and commented upon, often to the great confusion of the jury; but, when objected to, there must logically be some boundary set to this privilege.

In civil cases the court is judge of the law; the jury, of the fact. All will concede the policy of guarding a jury against danger of being misled or confused as to the law in finding a general verdict. All will concede that the law pertinent and relevant to the case ought to be clearly laid down by the court, and erroneous and inapplicable expositions of law, calculated to mislead, should be excluded from them. The right of counsel to present his exposition of the law, especially before instructions have been given, is valuable to the jury, in coming to their conclusion. Yet the argument is very strong that elaborate, conflicting, and confusing citations of law are dangerous, and that the court is the proper fountain to look to to declare the law.

Some authorities hold it error to permit counsel to read law at all in civil cases, while others hold it a matter not necessarily reversible error, but within the sound discretion of the court, to be reviewed in case of abuse; the latter position being, in my opinion, the better one. See *Tuller* v. *Talbot*, 23 Ill. 357; *People* v. *Anderson*, 44 Cal. 65; *Sullivan* v. *Royer*, 72 Cal. 251 (13 Pac. Rep. 655); 1 Am. St. Rep. 51, and notes; *Williams* v. *Railroad Co.*, 126 N. Y. 96 (26 N. E. Rep. 1048); Tomp. Trials, § 945, and cases cited, *Id.* section 951; *Curtis* v. *State*, 36 Ark. 284, 292.

It does not appear when the instructions were given— whether before or after argument. Where law, not good, or not pertinent to the case, has been read in argument and instructions are given, expounding properly the law of the case, likely such reading by counsel would be held not reversible error. If such reading were after instructions, and were contrary thereto, and the correctness of the instructions were denied by counsel, if the court should allow it against objection, I should think it error. *Delaplane* v. *Crenshaw*, 15 Gratt. 458.

Where it does not appear whether instructions were

given after or before argument, as error is not presumed, but must be shown, we would assume that instruction stating the law of the case were given after the argument, and that erroneous statements of the law in argument had not been allowed to go uncounteracted before the jury; and, though bad or irrelevant and misleading law had been read and commented upon in argument by counsel, yet if an instruction appears to have been given, acting as an antidote, and clearly neutralizing any pernicious influence of such argument, it would not be ground of reversal.

But on the other hand, where no such instruction appears, I think it would be reversible error. In the one case we would be justified in saying that the jury have ample intelligence to reject the bad law as given in argument, and accept the good law as given by the court; but, in the other case, we would be equally justified in saying that bad law, as read, especially when contained in decisions of courts of authority, and comment thereon, uncorrected by the court, had some influence, or may have had, to lead the jury astray. This rule would, on the one hand, prevent trials from being overthrown, where we are satisfied that no harm was done the party by reason of the corrective action of the court through instructions properly stating the law; and, on the other, where it appears the party may have received injury, he would be relieved from it.

Now in this case, counsel read point 3 in syllabus in *Searle* v. *Railway Co.*, 32 W. Va. 370 (9 S. E. Rep. 248) which is as follows:

"3. The following instructions are not erroneous, in an action brought under said statute to recover damages for the causing of the death of the husband and parent by the negligence of a railroad company: '(2) The law, in tenderness to human life and limbs, holds railroad companies liable for the slightest negligence, and compels them to repel, by satisfactory proof, every imputation of such negligence. When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. (3) The Kanawha & Ohio Railway Company, as a common carrier of passengers, was bound to

exercise the utmost degree of diligence and care in safely transporting Daniel Searle upon his journey. (4) The slightest neglect against which human prudence and fore-sight might have guarded, and by reason of which his death may have been occasioned, renders such company liable in damages for such death. (5) Said railroad company is held by the law to the utmost care, not only in the management of its trains and cars, but also in the structure, repair, and care of the track and bridges, and all other arrangements nec-essary to the safety of passengers. (6) The jury are in-structed that, in estimating the pecuniary injury, they may take into consideration the nurture, instruction, and phy-sical, moral, and intellectual training, which the children would have received from their father. (7) The jury are instructed that, while they must assess the damages with reference to the pecuniary injuries sustained by the distrib-utees in consequence of the death of Daniel Searle, they are not limited to the losses actually sustained at the precise period of his death, but may include, also, prospective losses, provided they are such as the jury believe, from the evi-dence, will actually result to the 'distributees as the prox-imate damages arising from the wrongful death.'"

He also read from *Railroad Co.* v. *Noell*, 32 Gratt 394, as follows:

"When injury or damage happens to a passenger by the breaking down or overturning of a railroad train, or the breaking down of a bridge, wheel, or axle, or any other ac-cident occurring on the road, the presumption, *prima facie*, is that it occurred by the negligence of the railroad com-pany; and the burden of proof is on the company to estab-lish that there has been no negligence whatever, and that the damage has been occasioned by inevitable casualty, or by some cause which human care or foresight could not prevent."

Those cases were cases of injury to passengers, and those principles were applicable to injuries to them, as regards particularly negligence. The mere accident and injury to a passenger is, under those cases, *prima facie* evidence of culpable neglect, imputable to the railroad company, and calling on it to assume the burden of proof, and

exculpate itself from the charge of negligence, whereas this is a case where a different rule prevails, and the mere accident and injury do not create, *prima facie*, a case of negligence, but the plaintiff must show it. A very important matter. The law so read lays down the most rigid rule of accountability against the railroad company, very proper in such cases. It states the duty and obligation of the defendant in the strongest phase. It places the burden of proof as to a vital point—negligence—on the defendant. I can hardly conceive a case where irrelevant law would be more calculated to influence and mislead a jury. It would wield an influence—a secret, silent influence. And no instruction appears in the record to nullify its force. The jury, hearing the defendant's counsel object to the reading of those cases, and hearing the court overrule his objection, would naturally conclude that their law was relevant, applicable to the case, and to be given weight, especially as coming from the Supreme Court of the State.

I note a conflict between the degree of care as laid down in the Searle case, which calls for the utmost degree of care, and that in plaintiff's instruction No. 5, which calls only for reasonable care; but, as above stated, we should regard that instruction as curing the vice. It shows, however, the danger of confusion in the minds of jurors. That the reading to the jury, in argument, law not good, or irrelevant and misleading, is error, is sustained by the case of *State* v. *Klinger*, 46 Mo. 224; Whart. Crim. Pl. & Pr. §§ 571, 578; *Williams* v. *Railroad Co.*, 126 N. Y. 96 (26 N. E. Rep. 1048); 1 Thomp. Trials, § 950—and by good reason.

As to the contention that there is error in allowing counsel to read the *quære* in *Railway Co.* v. *Wightman*, 29 Gratt. 431, I think it not reversible error, because it relates only to the principle of estimating damages, and as to that the court gave ample instruction.

As to the contention that there is error in the fact that counsel read part of the syllabus in *Criswell* v. *Railroad Co.*, 30 W. Va. 798 (6 S. E. Rep. 31) there is no error. We must hold that syllabus as good law; and, this and that case both being actions for injuries to servants against railroad companies, the law was not irrelevant or misleading.

It is claimed that the facts in those cases were used as evidentiary matters in argument. But, while the exceptions state that the counsel commented on the syllabi, we do not know the character of comment. Of course they could not be used for purpose of fact in the case. The case of *Ricketts* v. *Railway Co.*, 33 W. Va. 434 (10 S. E. Rep. 801) is not applicable. It only decides that counsel can not read cases showing amounts of damages found, to increase damages in the case on trial.

As to refusal of new trial on the newly-discovered evidence of Gove. I think it ground for a new trial. It is unnecessary to discuss this matter, as it involves no principle of law not well settled. As a new trial is to be had, we do not pass at all on the question of the defendant's liability or nonliability under the evidence. That is for the future trial.

Judgment reversed, verdict set aside, new trial awarded, and case remanded.

REVERSED.   REMANDED.