# WHEELING.

## ROBRECHT *v.* MARLING'S ADM'R.

Submitted June 2, 1887—Decided June 25, 1887.

1. DEMURRER.

Where a declaration contains two or more counts, and there is a general demurrer to the whole declaration, and one of the counts is good, the demurrer should be overruled. To reach the count, the demurrer should be "to the declaration and each count." (p. 769.)

2. DEMURRER.

Where there is a single count, which contains matter which will sustain the action, and also matter, upon which no recovery can be had, and there is a demurrer to the whole count, the demurrer must be overruled; but if the good and bad in the count are divisible, there should be a demurrer to such part of the count, as sets up matter, upon which there can be no legal recovery. (p. 769.)

3. DEMURRER.

If no demurrer be taken to such bad portion of the count, the defendant may object to any evidence as to such matter, or he may move to exclude such evidence, or he may ask an instruction to the jury to disregard such evidence. If he takes neither of these courses, and there should be a general verdict against him, he may move to set aside the verdict; and, if it clearly appear to the court, that the verdict was made excessive by the admission of such illegal evidence, the court should set aside the verdict and grant a new trial; and, if the evidence or facts are certified on writ of error, and the verdict clearly appears to the appellate court to be excessive because of the admission of such illegal evidence, said court will disregard such evidence, reverse the judgment and set aside the verdict. (p. 773.)

4. MEASURE OF DAMAGES—LANDLORD AND TENANT.

In an action for damages for the failure of the landlord to give possession of property, which has been leased, or from which he has ejected the tenant, where the gist of the action is the deprivation of the benefit of the lease, whether the action be covenant or tort, the general rule is, that the plaintiff is entitled as the measure of his damages to the difference between the rent reserved and the value of the premises for the term. He may also recover such special damages, as have been directly and necessarily occasioned by the defendant's wrongful act or default, but can not recover, what he might have made on the premises during the lease, nor for loss sustained by the selling of his stock, agricultural implements &c. for less than their value.  (pp. 770, 771.)

5. PLEA IN ABATEMENT—WHEN FILED.

A plea in abatement, that another action is pending for the same matter, must under the statute be filed at rules.  (775.)

6. ESTOPPEL—INJUNCTION.

Where one obtained an injunction to restrain a trespass and declared in his bill, that the defendant was a sole trespasser, and afterwards brought his action against his landlord for committing the trespass and dispossessing him of the property, which he claimed to have leased from said landlord, a plea of estoppel to deny in the second action, what he had claimed in the first, is bad and properly rejected.  (pp. 775, 776.)

7. EVIDENCE—RECORD.

In the second action the record in the first is not admissible except such portions. as may contradict the evidence of the plaintiff in the record.  (p. 776.)

*W. P. Hubbard* and *J. E. McKennan* for appellant.

*Robert White* for appellee.

JOHNSON, PRESIDENT :

This is an action of trespass on the case brought in the Circuit Court of Ohio county, in July, 1876, by John Robrecht against Elijah Marling, Sr., to recover damages for breach of contract for the lease of a farm. The first count in the declaration is as follows :—" John Robrecht complains of Elijah Marling, senior, who has been duly summoned to answer the said plaintiff of a plea of trespass on the case, for that heretofore, to wit, on the 1st day of April, 1875, the said plaintiff was lawfully possessed of a certain messuage and tenement in said county situated

on Short creek and known as the Ryan farm and containing
about four hundred acres and of great value, to wit, of the
value of $50,000.00, which said messuage and tenement had
been theretofore leased by the said plaintiff of and from the
said defendant for one year then next ensuing for a cer-
tain rent to be therefor paid by the said plaintiff, to
wit, the sum of $1,000.00; and the said plaintiff being
so possessed of the said messuage and tenement as
aforesaid and entitled to the use, occupation and enjoy-
ment of the same for the said year then next ensuing,
to wit, from and including the 1st day of April, 1875, to
the 1st day of April, 1876, had paid, laid out and expended
divers large sums of money amounting in all to a large sum,
to wit, $5,000.00, for horses, cattle, sheep and swine, and for
machines, tools and various agricultural implements, and for
wheat, corn, oats and other grains to be used by him in and
about the said use, occupation and cultivation of the said
premises in and during said year; and the said plaintiff had,
to wit, on the 1st day of April, 1875, at great labor, trouble
and expense prepared for cultivation, manured and plowed
divers large fields of said premises, to-wit, one hundred
acres, and had sown with wheat and oats divers other large
fields of said premises, to wit, fifty acres, which said wheat
and oats so sown as aforesaid was then, to-wit, on the day
and year last aforesaid, growing in and upon said premises,
which said labor, trouble and expense were necessarily
done, incurred and expended by the said plaintiff in and
about his use, occupation and cultivation of said premises
for and during the year aforesaid. By means whereof and
by reason of the premises the said plaintiff expected to
realize and receive from the use, occupation and cultiva-
tion of the said messuage and tenement, and but for
the unlawful acts of said defendant hereinafter stated
would have received and realized divers large sums of
money, and made great gains and profits, to wit, $5,000.00,
for and on account of the labor, trouble and expense
aforesaid and in the use and enjoyment of the said prem-
ises during the said year; yet the said defendant well
knowing the premises but contriving and intending to in-
jure and defraud the plaintiff in this behalf did afterwards,

to wit, on the 1st day of April, 1875, enter into and upon the said messuage and tenement, then being in the lawful possession of the plaintiff as aforesaid and without the consent of the said plaintiff and in a forcible and violent manner put out and dispossess the plaintiff thereof and with a strong hand kept and continued the plaintiff so put out and dispossessed from thence hitherto. By means of which unlawful acts, of the said defendant the plaintiff during all the year aforesaid, to wit, from the 1st day of April, 1875, to the 1st day of April, 1876, lost and was and is deprived of the benefit of the said several sums of money and the labor, time, trouble and expense so paid, laid out, done and expended as aforesaid and was deprived of and lost the profits, benefits, and advantages, which might and would otherwise have arisen and accrued to him from the possession, use and enjoyment of the said messuage and tenement; and by reason of the unlawful acts of the said defendant aforesaid the plaintiff was obliged to and did sell and dispose of the said horses, cattle, sheep and swine, and the said machines, wagons, tools and agricultural implements and · the said wheat, corn, oats and other grain at a great sacrifice and loss of large sums of money amounting in all to a very large sum, to wit, $5,000.00, to the damage of the plaintiff $5,000.00."

The second count is similar to the first except that it allages, that the plaintiff in August, 1874, leased the said premises of the defendant for the year commencing on the 1st day of April, 1875, and ending on the 1st day of April, 1876, and relying on the good faith of the defendant he expended large sums &c., and after he had so leased and with the consent of the defendant had planted and sowed wheat &c. This count does not allege, that the defendant himself dispossessed the plaintiff, but that he procured, employed and incited Silas W. Wharton to do so, and that said Wharton did dispossess the plaintiff. There was a general demurrer to the whole declaration, which was overruled, and the defendant pleaded, not guilty. The issue was tried by a jury; and on the 7th day of December, 1877, a verdict was rendered for the plaintiff for $1,500.00 damages. The defendant moved to set aside the verdict, on the ground, that it was contrary to the evidence and was excessive. The

motion was overruled; and judgment was entered on the verdict.

The defendant took nine several bills of exceptions to the rulings of the court: the first five to the rejection of special pleas;—the sixth, which certifies all the evidence given by the plaintiff, to the refusal of the court to exclude the plaintiff's evidence on the ground therein stated;—the seventh to the refusal of the court to permit a supersedeas and supersedeas-bond in the chancery suit of John Robrecht v. Silas W. Wharton to be read in evidence on the part of the defendant;—the eighth to the refusal of the court to permit the whole record in said chancery suit to be read in evidence in behalf of the defendant;—the ninth, which makes the sixth a part thereof, and certifies all the residue of the evidence, to the refusal of the court to set aside the verdict and grant a new trial.

To the judgment the defendant obtained a writ of error with supersedeas.

The first question is: Did the court err in overruling the demurrer to the declaration? The declaration contains two counts; and the demurrer was to the whole declaration, not to the declaration and each count. It is well settled, that, if there are two or more counts in a declaration, and there is a demurrer to the whole declaration, and either count is good, the demurrer should be overruled. (Roe v. Crutchfield, 1 H. & M. 361; Scott v. Leary, 34 Md. 339; Monell v. Golden, 13 Johns. 398; Sears v. Trowbridge, 15 Gray 184.) And if there be a declaration in covenant assigning different breaches, and there be a demurrer to the whole declaration, if any one of the breaches contains a cause of action, the demurrer will be overruled. (1 Chitt. Pl. 696, and cases cited.) In the first case the demurrer should be to the declaration and each count thereof; and in the second case to the declaration and each breach assigned. The same rule applies where the declaration consists of but one count, part of which is sufficient, and the residue is not, provided the matters alleged are divisible in their nature. (1 Chitt. Pl. 197.) Therefore, if a count in a declaration contains matter which will sustain an action, and other matter, for which no recovery can be had under the rules of law, and there be a de-

murrer to the whole count, of course the demurrer must be overruled, because a cause of action is stated; but the demurrant should, if the matter so stated good and bad together is divisible, demur to such parts as are bad; and it would be error not to sustain such demurrer. (*Colburn* v. *Phillips*, 13 Gray 64; 1 Chitt. Pl. 697.)

In the case before us the declaration contains two counts, and the demurrer is to the whole declaration; therefore, if a good cause of action is stated in either count, the demurrer was properly overruled; and if either count or both contain matter for which there should be no recovery, and yet either or both contain matter which will sustain an action, and for which a recovery should be had, there being no demurrrer to the bad portion of such count, the demurrer was properly overruled. The action here is case; but it will be seen by an inspection of the count, which we have copied, that no damage is claimed on account of the manner of depriving the plaintiff of the possession, but on account of the consequences of the breach of contract of lease, and in such case the measure of damages is the same, as it would be, if lease had been a written one, and the action had been for the breach of contract. (*Trull* v. *Granger*, 8 N. Y. 115.) In that case where the landlord refused to give possession according to the contract, it was held, that the tenant might maintain his action for damages upon the implied agreement to yield possession, or in tort for the violation of the duty arising from the relation of landlord and tenant, and that the measure of damages in either was the same.

What is the measure of damages in such cases? If the plaintiff in this case has the correct idea, the measure of damages is not only all the damages, which are the natural result of depriving him of the possession, but also the value of the stock, farming materials, &c., which he may have purchased for the purpose of cultivating the land, the profits, which he could have made, and the losses which he may have suffered by the sale of his cattle, horses, sheep, swine, wagons, farming materials, &c., which, he alleges in his declaration, he sold at public auction, because he was deprived of the possession of the farm. If he had no lease of the farm, of course he suffered no legal damage whatever. That was

controverted and was a question for the jury. His declaration alleges, that he had such lease. But he certainly had no right to recover for all the damages, which, he alleges, he suffered. The damages in such cases is the difference between the rent reserved and the value of the premises for the term. ( *Trull* v. *Granger*, 8 N. Y. 115; *Cilley* v. *Hawkins*, 48 Ill. 308; *Adair* v. *Bogle*, 20 Ia. 238; *Newbrough* v. *Walker*, 8 Gratt. 16.)

In 8 N. Y. 115, the court say : "The difference between the yearly value of the premises and the rent was the true measure of damages." In 48 Ill. the court say : "It appears from the bill of exceptions, that plaintiff in error asked a number of questions in reference to what could have been made on the farm during the continuance of the term, and what was the damage in not getting the farm to cultivate, and the value of the teams &c. to have been furnished by the defendant in error and the use of the place for cultivation and pasturage &c. All of these questions were in their nature speculative and could not be answered, except upon supposing facts would exist, which might never occur. They would all depend upon a variety of circumstances, which might never exist, such as the season, the mode of culture and other contingencies, of the occurrence of which no one could tell. Had the evidence been admitted, it would have been based on mere conjecture, and the jury in considering it would have been compelled to proceed upon mere supposition. * * In such case the true inquiry is as to the value of the lease, at the time the breach occurred. Such terms necessarily have a market value like other estates and interests in real estate; and the inquiry should have been : What was its true worth ? For how much could plaintiff in error have sold it to any one desiring to purchase ? Not how much any person might imagine could have been made by its enjoyment. * * * The court properly admitted evidence of the value of the labor performed by plaintiffs in error in breaking ground, as from it they derived no benefit but sustained a loss. · They also had a right to show, that they had sustained other losses by incurring expense to carry out their part of the agreement under the lease."

In *Adair* v. *Bogle*, 20 Ia., Dillon, Judge, said : " The

law is settled, that, if the lessor refuses to permit the lessee
to occupy the premises in accordance with the agreement,
he thereby renders himself liable to an action for the dam-
ages. * * * It is also settled, that in such an action
against the landlord for damages, the general rule for the
measurement thereof is the difference between the rent re-
served and the value of the premises for the term. If the
value of the premises for the term is no greater than the
rent, which the tenant has agreed to pay, then the latter is
not substantially injured and can in general recover only
nominal damages, though the landlord without just cause
refuses to give possession. * * * * Two principles
should in cases like the present be impressed upon the jury :
1st—The plaintiff should recover only such damages, as have
directly and necessarily been occasioned by the defendant's
wrongful act or default ; and second—If the plaintiff by
reasonable exertions or care on his part could have pre-
vented such damages, he was bound to do so ; and so far as
he could have thus prevented them, he can not recover
therefor." He is not confined to his general damages, where
special damages have been suffered. On this subject the
same judge in the same case said : " If other damages have
resulted as the direct and necessary or natural consequence
of the defendant's breach of the contract, these are recover-
able, certainly where, as in this case, they are specifically
set forth. For example, if the plaintiff in good faith and
relying on the contract made preparations to remove on to
the defendant's farm, and these preparations were rendered
useless in consequence of the defendant's refusal to comply
with his contract, the authorities hold, that there may be a
recovery for the loss thus sustained."

In *Newbrough* v. *Walker*, 8 Gratt., it was held in an
action of covenant for the failure of the defendant to deliver
possession of a mill to plaintiff under a lease, that, the plain-
tiff not having sustained any special damages, he is entitled
to recover only the difference between the rent contracted
to be paid and a fair rent for the property at the time it
should have been delivered. A conjectural estimate of the
profits, which might have been made, is no legitimate basis,
upon which to fix the damages. In that case a verdict and

judgment were rendered for $250.00 damages. The appellate court held the damages excessive under the legimate evidence in the case. It was shown, that the difference between the rent reserved and the value of the term was $100.00. This, the court held, he was entitled to recover. It seems, that evidence of what might have been made by way of profits was admitted without objection; but Moncure, Judge, in delivering the opinion of the court said: "The evidence of a witness, that during the first year of the lease the plaintiff could have cleared $300.00 or $400.00, was necessarily speculative and conjectural and furnished no legitimate basis, upon which to estimate the damages."

The demurrer to the declaration was properly overruled, because one of the counts and indeed both stated a cause of action. But, as we have seen, there was much in both counts laid as special damages, to wit, what the plaintiff could have made in the year on the farm, the amount he had paid for stock &c. and the sacrifice of his property at the sale, that could not properly be recovered in the action. It is apparent from the record, that there is no proof, that the lease for a year was worth more than the rent reserved. There was no proof of special damages properly recoverable except the plowing of the fields and the sowing of the grain, the whole of which would not probably exceed $250.00. The proof, as to what the labor, seed &c., so expended and used, amounted to, is not clear; but enough appears from the record to show, that the verdict exceeded what the proper evidence admitted proved the plaintiff to be entitled to receive, by at least $1,000.00 and perhaps $1,250.00. I do not pretend to measure it precisely. But there was no objection to the admission of the improper evidence of speculative and other improper damages and no motion to exclude such evidence nor any instruction asked to the jury to disregard it. There was a motion to exclude all the evidence of the plowing because of a supposed variance between the proof and the declaration; but that motion was properly overruled, because there was no such variance, and further because there was some evidence to sustain the action. Now, the defendant having failed to demur to the parts of the counts alleging special damages not recoverable and failing to ex-

cept to the introduction of such improper evidence and failing to move to exclude it and failing to ask an instruction to the jury to disregard it, can he avoid the effect of it by a motion to set aside the verdict? If there had been no legal cause of action alleged in the declaration and no demurrer to the declaration, and verdict and judgment had been rendered, upon a writ of error to such a judgment it has often been held, that notwithstanding our strong statute of *jeofails* the judgment and verdict would be set aside, and a judgment would be entered in the appellate court for the defendant *non obstante veredicto*. (*Mason* v. *Farmers' Bank*, 12 Leigh, 84; *Davis* v. *Comm.*, 13 Gratt. 139; *Ross* v. *Milne*, 12 Leigh 204; *Boyle* v. *Overby*, 11 Gratt. 202; *Holliday* v. *Myers*, 11 W. Va. 276.)

If this is true, when there is no cause of action, it seems to me, where a part of the declaration sets out a good cause of action, and another part alleges matter not recoverable, and there is a general verdict, and the court can clearly see, that the illegal evidence made the verdict excessive, it is error in the court to refuse to set aside the verdict and grant a new trial; and on writ of error, where the facts proved or evidence is all certified, if the appellate court can separate the evidence and clearly see, that the improper evidence has necessarily increased the verdict more than $100.00 over what it ought to be, said Court should reverse the judgment and set aside the verdict though there was no demurrer to the declaration, and no exception was taken to the illegal evidence or motion to exclude it, and no instruction asked to the jury to disregard it. We are not without express Virginian authority on this subject.

In *Roe* v. *Crutchfield*, 1 H. & M. 361, it was held, that if there be several counts in a declaration, and any one of them be good, though all the rest be faulty, a general demurrer to the declaration should be overruled. In such a case, if a writ of inquiry be executed after overruling the demurrer, the defendant may nevertheless object to the admission of evidence applying only to the faulty counts, and tender a bill of exceptions or demurrer to the evidence, or may apply to the court to instruct the jury to disregard such faulty counts. But in that case it was further held, that, if no such

steps were taken, and entire damages were given, the verdict is good and ought not to be arrested.

In that case, it seems, there was no motion to set aside, because referring to the steps, that might have been taken, Judge Tucker says : " But the defendant having neglected to take any of these steps, upon the execution of the writ of inquiry we may say in the words of the court of K. B. *non constat*, but that the plaintiff did prove the count for money had and received by other evidence than that, which he offered to prove the first count; and since that is the case the act of *jeofails* (L. V. 1,794, c. 76, s. 38) does in my opinion make the verdict good."

In *Newbrough* v. *Walker*, 8 Gratt. 16, there was a motion to set aside the verdict, because it was excessive; and though there was no exception, as far as it appears, to the evidence or instruction to disregard it asked for, the court disregarded the improper evidence and set the verdict aside as excessive. We are therefore authorized to add to what was held in *Roe* v. *Crutchfield*, 1 H. & M.; but if no such steps as objecting to the evidence or demurring thereto or asking the court to instruct the jury to disregard it, be taken by the defendant, and he moves to set aside the verdict, and the evidence or facts proved are certified, and the appellate court can clearly see from such evidence or facts that by such illegal evidence injustice has been done to the plaintiff in error, and by such evidence the verdict has been increased, and such excess so made be within the jurisdiction of the court, the judgment will be reversed for such cause, and the verdict set aside and a new trial granted. Such is this case; and for the reasons we have stated, because the illegal evidence increased the verdict more than $1,000.00 beyond what it ought to have been, the judgment will have to be reversed, the verdict of the jury set aside, and a new trial granted.

The first bill of exceptions is to rejecting a plea in abatement, which set up the fact of a pending suit. I think, this was not a good plea; but whether it was or not, it was properly rejected, as it was tendered too late. It should have been filed at rules, if at all. (*Flesher* v. *Hassler*, *supra* 404.)

Bills of exceptions 2, 3, 4 and 5 are to the rejection of four

several pleas in bar, which attempt to set up the fact, as an estoppel, that Robrecht, the plaintiff, had in his bill and other pleadings in the injunction-suit against Silas W. Wharton claimed that said Wharton was the sole trespasser, and without the authority of Marling had dispossessed him; whereas in this action in his declaration he claims that Wharton was incited to commit the trepass by Marling. There is no estoppel here. It does not appear, that by anything, he said or did in that suit, he put Marling in any worse position than he otherwise would have held. He might have been honestly mistaken as to the facts, when he filed the bill. There was no *res judicata* in that case. So he is not estopped by the record (*Robrecht* v. *Wharton, supra* 746.) Indeed the pleas are not, that he was estopped by the record. They were properly rejected.

Exception No. 6 has already been disposed of. No. 7 was to the refusal of the court to permit the appeal and *supersedeas* granted in *Robrecht* v. *Wharton* with the *superdeas*-bond to be given in evidence on the part of the defendant. The court properly refused this evidence. No plea was filed or could have been filed, under which it would have been proper evidence. It had nothing to do with the action against Marling.

Bill of exceptions No. 8 was to the refusal of the court to permit the whole record in *Robrecht* v. *Marling* to be given in evidence on behalf of the defendant. This was not error for reasons already stated. To contradict Robrecht's testimony the court admitted in evidence such portions of said record, as shows, that Robrecht had admitted, that Marling had nothing to do with dispossessing him of his farm, and that the trespass was by Wharton alone.

Bill of exceptions No. 9 was to the refusal to set aside the verdict [and grant a new trial and has already been fully considered.

For the reasons stated the judgment of the Circuit Court is reversed, the verdict of the jury set aside, and a new trial granted.

REVERSED.   REMANDED.