## CHARLESTON.

STEWART *v.* OHIO RIVER R'D CO.

Submitted June 19, 1893.—Decided December 6, 1893.

1. DAMAGES—RAILROAD COMPANIES.

A case in which the declaration shows that the landowner whose lot abuts on a public street, on and along which a railroad company has laid its track and runs its trains, has sued for the permanent injury to his property caused thereby.

2. DAMAGES—RAILROAD COMPANIES.

Where a railroad is laid down in a public street, the abutting property is damaged within the meaning of section 9, Art. III, of the constitution to the extent of the depreciation caused by the construction and operation of the road.

3. DAMAGES—RAILROAD COMPANIES.

The measure of the damages is such a sum as will make the owner whole—that is, the depreciation of the market-value of the abutting property, caused by the railroad company laying their track and running their trains in the street.

4. DAMAGES—RAILROAD COMPANIES.

In such case, if the fair market value of the abutting property is as much immediately after the construction of the railroad as it was immediately before such improvement was made, no damages are sustained for which a recovery can be had.

D. H. LEONARD and V. B. ARCHER for plaintiff in error cited Lew. Em. Dom. § 225; 12 Law. Rep. Ann. 609, 615; 34 W. Va. 479; 129 N. Y. 576; 83 Ill. 535; 70 Ill. 238; 90 Ill. 42; 82 Ill. 208; 68 Ill. 607, 614; 70 Ill. 347; 91 Ill.

312; 118 Ill. 203; 75 Ill. 41, 47; 70 Ill. 324; 26 Fed. Rep.
415.; 67 Ga. 386; 70 Ga. 611; 78 Ga. 276; 80 Ala. 489;
8 N. Y. Supp. 78; 50 Ill. 241, 246; 28 Ill. 73; 101 N. Y.
38, 3d. p't Syll.

C. E. HOGG and J. E. BELLER for defendant in error cited
16 S. E. Rep. 819; 31 W. Va. 483; 29 W. Va. 765; 27 W.
Va. 306; 34 W. Va. 232; 10 W. Va. 546, Syll. p't 5; Acts
(1852) p. 309; Code, c. 54, s. 48, 50 par. 6; 16 S. E. Rep.
519; 3 Am. R'd & Corp. Rep. 710; 71 Mo. 575; 101 N. Y.
98; 62 Tex. 593; 63 Tex. 223; Id. 345; 108 U. S. 317.;
Wood Nuis. § 864; 13 S. E. Rep. 567; 15 S. E. Rep. 788;
16 Am. & Eng. L. 987; 26 W. Va. 672; 3 Am. R'd &
Corp. Rep. 251; Id. 268; 24 W. Va. 674; 26 W. Va. 788;
12 W. Va. 116; 32 W. Va. 487.

HOLT, JUDGE:

This is an action of trespass on the case brought by
plaintiff Stewart against the defendant company in the
Circuit Court of Mason county on the —— day of April,
1889, for injury to a lot of land situate in the town of
West Columbia. The defendant appeared and demurred,
and plaintiff filed an amended declaration. To this also
defendant demurred, but the court overruled the demurrer,
and defendant entered the plea of not guilty. The jury
found for plaintiff and assessed his damages at two hun-
dred and eighty five dollars. During the trial of the cause
various objections were made by defendant to the intro-
duction and rejection of certain evidence, which appears
in the certificate of evidence, which objections the court
overruled, and the defendant's exceptions were noted in
the certificate of evidence. The defendant also took three
bills of exception—No. 1 for the refusal of the court to
give defendant's instruction No. 1; No. 2 for refusing de-
fendant's instruction No. 2; and No. 3 for overruling de-
fendant's motion to set aside the verdict and grant it a new
trial, upon the ground that the verdict was contrary to the
law and the evidence and was excessive. All the evidence
is certified and made by reference thereto part of this bill
No. 3. The court overruled the motion and gave judg-

·ment, and defendant obtained a writ of error with *supersedeas.*

The plaintiff in error (defendant below) assigns eight distinct grounds of error, which may be considered under four heads: (1) The sufficiency on demurrer of plaintiff's amended declaration; (2) in admitting for plaintiff and refusing for defendant, certain testimony on the trial; (3) in refusing to give the two instructions asked by defendant; (4) in overruling defendant's motion for a new trial.

The declaration as amended contains but one count in case. Though somewhat long, I give it in full not alone or in the main on account of the demurrer, but because in my view it shows the gravamen—the gist—of the action to be permanent injury to plaintiff's right as an abutting owner in his lot on Coal street, by causing great depreciation in value; and on that question, as it may appear from both the pleadings and the evidence, the vital point in the case must turn.

"Amended declaration. State of West Virginia, Mason county, to wit: In the Circuit Court thereof.

"The amended declaration of C. V. Stewart against the Ohio River Railroad Company: C. V. Stewart, by way of amendment to his former declaration filed herein, complains of the Ohio River Railroad Company, a corporation under the laws of the state of West Virginia, which does business in said state, and has its principal office in the city of Parkersburg, in said state, and which has been duly summoned to answer a plea of trespass on the case, for this, to wit, that the said plaintiff now is, and long has been, the owner in fee simple and occupier of a certain lot or parcel of land situate in the town of West Columbia, in the county and state aforesaid, and bounded on the west by Coal street, and on the north by the public road or street leading from the Ohio river to, and intersecting with, the Ripley and West Columbia pike, so that said lot is a corner lot, and very valuable, and upon which lot or parcel of land belonging to this plaintiff is situated a frame dwelling house, storehouse, stable and other buildings necessary and proper for the free use and enjoyment of the same, and which lot, with the buildings thereon, the said plaintiff now is, and

long hath been using, occupying and enjoying as a home and residence and place of business; and the plaintiff says that he used, occupied and enjoyed said premises as aforesaid, free from all obstructions, obstacles, incumbrances, interferences, or hindrances, as of a right he ought and should have done, until the happenings of the matters and things, and the acts and doings, hereinafter specified and complained of, namely, that during the time said premises were occupied, used and enjoyed by this plaintiff in the manner hereinbefore set forth, the said defendant, through and by its agents and employes, took possession and appropriated to its own use and benefit, to wit, on the —— day of ——, 1886, in the county aforesaid, that part of said Coal street which forms the western boundary of plaintiff's said premises, and defendant made deep and dangerous excavations in said street, and along the same, and immediately in front of plaintiff's said property, and built thereon its railroad bed and laid its railroad track on the same, and ever since the day and year last aforesaid the said defendant has been, and still is, using the same as a railroad right of way and railroad track, and the said defendant, ever since the day and year last aforesaid, has run its cars, locomotives, trucks, hand cars, engines, and all other rolling stock over the said Coal street, in the operation and carrying on of its business as a common carrier of freight and passengers, to the great and irreparable injury and damage to the said plaintiff in the use and the enjoyment of his said premises, and without compensating him therefor.

"And the plaintiff further says that the deep and dangerous excavations and cuts made in and along said Coal street immediately in front of his premises by said defendant, as aforesaid, have entirely destroyed the use of said Coal street by this plaintiff, so that this plaintiff can not now have access to and from his said premises on the western side thereof as he had theretofore done; that his said premises front upon said Coal street, and that he can no longer approach his said premises by means of said Coal street with wagons or other vehicles; and that said street was in constant use, in going to and from plaintiff's said premises, until it was destroyed by the said defendant, as aforesaid.

Plaintiff further avers that said excavations and cuts made in said street by said defendant are deep and dangerous, and that in some places the said excavations in front of plaintiff's said premises are as much as four feet in depth, and leave a narrow strip between said cut and plaintiff's said houses and buildings not exceeding six or eight feet in width.

"Plaintiff further avers that his only means of access to and from his said stable situate on said premises was over and along said Coal street, and that he can not now reach said stable with a wagon or other vehicle, and that his said stable is rendered almost practically useless to this plaintiff by reason of the destruction of said street by the said defendant as aforesaid; and the said railroad passes so near to the said stable that it is unsafe and dangerous to keep hay, oats, or other feed therein, or to confine or shelter stock therein, because of the great danger from fire originating from sparks issuing from the locomotives constantly passing along said street immediately in front of said stable; and the ground upon which said stable is located can no longer be appropriated to any valuable or practicable use or purpose, by reason of the loss of the use of said Coal street and its near proximity to said railroad track; and so plaintiff says that he has had to abandon the use of said stable, and the use and enjoyment of the ground upon which it stands. Plaintiff further says that the other buildings on his said lot are so close to said railroad track, by reason of the location of the said road on said Coal street, that there is great danger of their being lost and wholly destroyed by fire issuing from the locomotives of the defendant aforesaid, and this dangerous exposure to fire of plaintiff's said buildings has greatly enhanced the cost of procuring insurance thereon, and thus rendered it almost impossible for plaintiff to procure insurance against loss by fire upon his buildings aforesaid; and plaintiff says that the trains of the defendant which pass along and over said road immediately in front of his said buildings and property are very heavy, and frequently run very rapidly, whereby plaintiff's said buildings are greatly jarred and shaken, and much injured and damaged.

"Plaintiff further avers that the locomotives and trains of said defendant pass over said road in front of plaintiff's premises, as aforesaid, both in the nighttime and in the daytime, and shake and jar plaintiff's buildings, part of which is occupied by the plaintiff as a residence; and plaintiff is a person of highly sensitive nervous organization, and the shaking and jarring of plaintiff's said residence has greatly annoyed and disturbed him, and caused him great loss of sleep, whereby plaintiff's health has been much impaired.

"Plaintiff further avers that by reason of the facts and allegations hereinbefore specified, touching the injury to his said buildings and premises, that they have been depreciated in value more than two thirds, and their value prior to the injuries herein complained of was at least the sum of twelve hundred dollars. And by reason of which matters and things hereinbefore set forth and complained of, an action hath accrued to this plaintiff to demand and have of and from the said defendant the sum of one thousand dollars, the damages sustained by this plaintiff, as aforesaid; wherefore the plaintiff brings this suit.

"Hogg & Beller, P. Q."

With us the use of case rather than trespass throws but little light on the subject, for our statute, in order to obviate a distinction sometimes nice and troublesome in practice has provided, that an action of trespass on the case may be maintained in any case in which an action of trespass will lie. The demurrer however was not intended to raise this question and could not have had that effect. It states that it was to the declaration as amended and to each "demand" therein set out naming specially that averment, which charges plaintiff to be of a highly sensative and nervous organization and greatly annoyed, disturbed in sleep and thereby injured in health by the constant noise and jar caused by defendant's trains. But as the declaration contains but one count, there can be strictly only one demand or cause of action. All else save the gist of the action, whatever that may be, shows but the nature of the injury and the special causes and extent of the damage. Hence strictly speaking under our common-law procedure the thing aimed

at can not be reached in that way, except by a liberal construction of section 13, c. 131, of the Code, asking the court to instruct the jury to disregard the objectionable "demand," or under section 46, c. 130, move the court to order the plaintiff to file a definite or particular statement of his claim, or in accordance with our usual practice cause to be excluded all evidence offered touching the immaterial or otherwise obnoxious averment; and, as the declaration shows plainly enough that it is sufficient for judgment to be given according to law and the very right of the cause, the demurrer was properly overruled. On this subject, see *Robrecht* v. *Marling's Adm'r.* 29 W. Va. 765 (2 S. E. Rep. 827); *Newlon* v. *Reitz*, 31 W. Va. 483 (7 S. E. Rep. 411).

No instructions were asked by the plaintiff, none were given by the court, but the two following were asked by defendant and refused:

"No. 1. The jury are instructed that if they believe from the evidence in this cause that the plaintiff's property was worth as much immediately after the construction of the defendant's railroad as immediately before said road was constructed, then in such case they shall find for the defendant."

"No. 2. The jury are further instructed that when an action is brought to recover damages, where no part of the plaintiff's property has been taken, but simply damaged, by a public improvement, damages can not be had unless the property claimed to be damaged has been depreciated in value by the construction of the public imppovement. In other words, if the fair market value of the property is as much immediately after the construction of an improvement as it was immediately before the improvement was made, no damages can be sustained and no recovery can be had. Therefore, in this case, if the jury believe from the evidence that the fair market value of the plaintiff's property was as much immediately after the construction of the defendant's railroad as it was immediately before, then he has sustained no damages which can be the subject of a recovery in this suit, and they should in such case find for the defendant."

The two instructions seem to be alike in substance, so

far as plaintiff has a right to complain, and whether they were properly refused or not depends upon two questions. (1) Are they, or either of them, good law in a proper case? (2) And, if so, were they appropriate in this instance?

The facts of the case not controverted and bearing on the matter in hand are in short as follows: The *locus in quo* is a lot in the town of West Columbia, forty eight feet front along Beacon street, by one hundred feet deep along Coal street, with a one-story frame house on the corner, where plaintiff has lived continuously since the 29th day of August, 1878, when the lot was sold and conveyed to him in fee by John Treeger and wife, describing it as "known upon the plat of the town as lot No. 24, the same conveyed to John Treeger by John Hall and wife by deed dated 15th of August, 1865, to which deed as recorded," *etc.*, reference is made. The presumption is that his ownership in fee extends to the center of the street, subject to the public right of way, as nothing to the contrary appears. The town was incorporated the 1st of May, 1852, by act of the general assembly of Virginia, but had fallen, perhaps, into disuse now and then, as I infer from the testimony of Dr. Knight, who says incidentally of Coal street, "The town would not improve it, even when it was incorporated." In 1886 defendant laid down its track along Coal street nineteen feet, where it entered the street, crossing Beacon street, from plaintiff's house and lot, making a four foot cut and embankment in front of plaintiff's house, impairing somewhat his power of convenient ingress and egress with an ordinary wagon. The track gradually veers away from the plaintiff's property until at the lower end it is out of the street on the opposite side, being forty eight feet from the stable on the other end of plaintiff's lot; but it makes his stable, which extends four feet into the street, unfit for storing hay, *etc.*, by reason of danger of fire from sparks, and subjects plaintiff to such annoyance as the noise and jar and smoke of locomotives, *etc.* generally create, impairing its comfort and lessening its value as a dwelling-place. Coal street is forty feet wide. How the track runs with reference to the median line does not appear. By what right or authority defendant built and used

its road in and along this street does not appear directly from any evidence, and it can only be inferred, if at all, from the general right to build conferred by law, from the fact that plaintiff says they have used it since 1886, and nowhere intimates that it was built there unlawfully or without the authority or consent of the town or county—a prerequisite required by law. · But such consent is not material, for plaintiff in his averments proceeds on the inference that such consent had been given, or has plainly and distinctly elected to treat the entry of the company as an entry and taking under the exercise of the state's power of eminent domain, conferred upon it *pro hac vice*, and has waived the wrong of unlawful entry, and sued for the compensation the constitution of 1872 gives him for the permanent damages done to his property by reason of its depreciation thus created ; and on this point the plaintiff's declaration is plainer by what is left out, and more explicit by what is put in, than was the declaration in the case of *Johnson* v. *City of Parkersburg*, 16 W. Va. 402, or the one in *Fox* v. *Railroad Co.*, 34 W. Va. 466 (12 S. E. Rep. 757).

What other right of his was injured, or what other remedy he may have had, we need not inquire, for he elected to waive them, and as an abutting owner has sued for the just compensation for damage to his property, causing, as he alleges, "a depreciation in value of more than two thirds, and that it was worth before the injury complained of the sum of twelve hundred dollars." See, on this subject, *Porter* v. *Railway Co.*, 3 Am. R. & Corp. R 357, 363 (from 125 Ind. 476, 25 N. E. Rep. 556) edited and annotated by John Lewis, Esq., author of a work on Eminent Domain, which see, (section 507).

In *U. S.* v. *Great Falls Manuf'g Co.*, 112 U. S. 645, 656, (5 Sup. Ct. 306) Justice HARLAN delivering the opinion says : "There is no sound reason why the claimant may not waive that right (the right of injunction) and, electing to regard the action of the government as a taking under its sovereign right of eminent domain, demand just compensation."

In *Railroad Co.* v. *Baker*, 45 Ark. 252, 255 (a state with code procedure) COCKRILL, C. J. says : "The complainant

alleged a permanent injury to the land  *  *  *  with all
the particularity that could be required under any state of
pleading.  The complaint must be taken now as though
amended to conform to the proof, and the appellant's ob-
jection to it, if tenable at all, comes too late."

In our case no amendment was needed, and the tenor of
the testimony showed that plaintiff contemplated and
sought a recovery of damages as a just compensation for
the depreciation of his abutting property.

In the case of *Organ* v. *Railroad Co.*, (1881) 51 Ark, 225,
266 (11 S. W. Rep. 96) BATTLE, J. says: "But the owner
may waive formal condemnation proceedings and all for-
mal modes of transfer, and elect to regard the action of the
railroad company as a taking under the right of eminent
domain, and demand and recover just compensation."

Plaintiff's proof shows, what his declaration expressly
avers, that defendant, ever since the―――― day of ――――,
1886, has runs its cars and all other rolling stock over Coal
street in carrying on its business as a common carrier of
freight and passengers; and the whole scope of his evi-
dence shows that the object of his suit was to recover
damages for the injury caused to his abutting lot by perma-
nent depreciation occasioned directly by the building and
running of defendant's railroad; so that it is too late now
and in this court for plaintiff to shift his ground and say
that he is suing for a wrongful entry, or a continuing nui-
sance to his adjacent property; so that whether defendant
entered on his fee subject to the easement, or on a street
simply abutting on his freehold, without his consent and
without condemnation, he has elected his remedy, both by
pleading and proof, to go for the permanent depreciation,
and must abide by it.  All the special acts of injury and
resulting damage pleaded or proved have weight and bear-
ing only so far as they tend to show such permanent injury.
The question of the railroad being a nuisance did not arise,
except so far as that fact tended to show the character of
the railroad as a permanent injury depreciating the prop-
erty, and the amount of such depreciation, no matter how
special such inconvenience and discomfort may be shown
to be.  If it was a constant injury of any kind, by which

it destroyed the value of his property two thirds or entirely, that only furnished one element for measuring and ascertaining the compensation. This keeps us in line with the pleading and practice of our cases, as far as they have gone, and helps to avoid inconvenient confusion of rights and remedies.

No instruction was asked on behalf of defendant, none was given by the court, and this brings us to the two instructions asked by defendant and refused by the court. The question is: Where a railroad is laid down and operated in a public street, what measures the damage to the abutting property which the owner may recover as compensation for the injury under section 9, art. III, of our state constitution? The question is not altogether a new one in this state. In *Johnson* v. *City of Parkersburg* (1880) 16 W. Va. 402, six years after our present constitution was adopted, the question is fully discussed by Judge Johnson in all its bearings, both as to the extent of the right and the nature of the remedy. The declaration in that case was properly framed to authorize a recovery for such compensation. In *Spencer* v. *Railroad Co.*, 23 W. Va. 406, the question was again discussed in all its bearings.

. In *Fox* v. *Railroad Co.*, 34 W. Va. 466, 473 (12 S. E. Rep. 757) Lucas, P., reviews these cases and says (page 473, W. Va., and page 760 (12 S. E. Rep.): "In those cases, both in the syllabus and opinion, it is made perfectly clear that for permanent injuries to the value of the property entire damages can be recovered in one suit, and no second suit can be brought for the same cause of action. It is also manifest, from a study of these cases, that the owner recovers damages which necessarily result from the building and proper use by the railroad company of its track in the adjoining street, which has been taken and occupied. Evidence of the rental value, also that the plaintiff had been offered one thousand dollars for the property, would seem to be proper in assisting the jury in estimating the permanent damage." The gravamen of the charge in the second count is that the said "dwelling house and premises have, by means of the premises aforesaid been greatly damaged, lessened in value, and permanently injured."

This decloration is almost identically the same as the declaration in *Johnson* v. *City of Parkersburg*, 16 W. Va. 405, except that it is rendered still more appropriate as a count for permanent injury by charging in direct language that the property has been permanently injured. So that in this state it can not be said that the true measure of damages in such case is an open question, but that following the numerous decisions on the subject in other states especially those of the state of Illinois the abutting property is damaged within the meaning of our constitution to the extent of the depreciation caused by the construction and operation of the railroad (see Lewis, Em. Dom. § 225); and it is immaterial, whether the fee of the street is in the public or in the adjoining owner.

From this it follows, that, no damage can be recovered on account of the construction and operation of the railroad, where no property is actually taken, if its fair market value is as much immediately after as it was before the completion of such railroad. See *Springer* v. *City of Chicago*, 135 Ill. 552 (26 N. E. Rep. 514). At page 552, 135, Ill., and page 514, 26 N. E. Rep. Craig, J., says:

"Where an action is brought to recover damages where no part of the plaintiff's property has been taken, but merely damaged by the public improvement, the law is well settled that a recovery can not be had unless the property claimed to be damaged has been depreciated in value by the construction of the public improvement. In other words, if the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained, and no recovery can be had." *McQuaid* v. *Railway Co.*, 1 Am. R. & Corp. R., by Lewis, pp. 34, 51; S. C. 18 Or. 237 (22 Pac. 899.)

The editor in his note to case says (page 51) under the head of "The Measure of Damage:"

When the fee of the street is in the abutting owner, and the purpose of the suit is to recover the just compensation guaranteed by the constitution, the measure of damages is the same as in any other case of partial taking—the difference in the value of the property with and without the

railroad; and that this is the better view, also, in cases where there is only a partial taking; citing *Spencer* v. *Railroad Co.*, 23 W. Va. 406; *Taggart* v. *Railway Co.* 19 Atl. 326; *Railway Co.* v. *Doyle* (13 S. W. Rep. 936) 88 Tenn. 747; Booth, St. Ry. Law, § 94.

This was the measure of damages impliedly taken and adhered to by the court, as the question arose upon the giving in of the testimony of the witnesses, except the answer of one witness, who considered it damaged as a home one half its value; that he permitted to go for what it was worth, but not as a proper estimate to found the amount of damages on. So that if there was any question of *pretium affectionis* as a home, or other matter special to the plaintiff, it was either not offered, or ruled out by the court without objection on the part of plaintiff. All the witnesses were asked their opinion as to the amount of damages which had been held to be not error in *Railroad Co.* v. *Foreman*, 24 W. Va. 662; *Hargreaves* v. *Kimberly*, 26 W. Va. 788. As to witness' stating his opinion of Damages, etc., see *Railroad Co.* v. *Brunson* 22 Pac. 495; 2 Amer. R. & Corp. R. 180, 185.

I can see no objection to the use of the term "market value," used in the instruction asked; that would seem to have the sanction of the authorities which have passed upon the subject. Mr. Lewis, in his work on Eminent Domain (section 478) defines the market value in this connection to be the price which it will bring, when it is offered for sale by one who desires but is not obliged to sell, and is bought by one who is under no necessity of having it. *Railway Co.* v. *Vance*, 115 Pa. St. 325 (8 Atl. 764); *Lawrence* v. *Boston*, 119 Mass. 126; *Railway Co.* v. *Woodruff*, 49 Ark. 381 (5 S. W. Rep. 792); and cases already cited.

As to the term "immediately after, and immediately before the improvement was made," it is also correct, though the damage given might comprehend interest on the amount of compensation agreed on after the date, at which it is estimated, down to the verdict. All the facts as to the condition of the property and its surroundings, its improvements, its capabilities, the enhancement in view of the

contemplated railroad immediately before the construction and location and its value immediately after the construction may be considered; also the question: Has the market value been decreased by the taking, or has it prevented an enhancement, and, if so, to what extent? See *Bohm* v. *Railway Co.*, 129 N. Y. 576 (29 N. E. Rep. 802); *Boom Co.* v. *Patterson*, 98 U. S. 403.

In *Fox* v. *Railroad Co.*, 34 W. Va. 466, 477 (12 S. E. Rep. 757) the Circuit Court refused to give the following instruction: "In this action the jury can not take into consideration in ascertaining damages, if any, the market value of the property of the plaintiff before or after the laying of the track in question;" and this Court, in view of what was said during the course of its opinion in regard to the nature of the action and the character of the evidence, that might be properly introduced, says (page 479, 34 W. Va., and page 762, 12 S. E. Rep.) that such instruction was properly refused as erroneous.

I have already stated that the road after crossing Beacon street enters Coal street, extending about one foot across and from the medium line towards plaintiff's house; that is, at the point of entrance into Coal street in front of plaintiff's house it is nineteen feet from the house, and at the lower end of plaintiff's lot on that street it is forty eight feet from his stable or lot, being off the street entirely.

A public highway only vests in the commonwealth a right of passage; but the freehold and the profits (such as trees upon it and mines under it) belong to the owner of the soil, who has a right to all the remedies for the freehold, subject, however, to the easement. *Bolling* v. *Mayor, etc.* (1825) 3 Rand. (Va.) 563, 573. The presumption is that the ownership of the abutting owner in fee extends to the center of the street unless the contrary appears. Whether the fee is in the abutting owner or in the public, he has private rights as such abutting owner such as the right of egress and ingress, and of light and air, but subordinate to the rights of the public in the street. See *Transylvania University* v. *City of Lexington*, 3 B. Mon. 25. If the road is laid wholly on the other half of the street, the abutter's right to compensation would be the same as in cases where

the fee of the entire street is in the public. See *Railway Co.* v. *Brown*, 23 Fla. 104 (1 South. 512). As the abutting owner has a right of egress and ingress, and a right to light and air notwithstanding the fee is in the public, it follows that any interference with these rights is a damage, for which he is entitled to compensation under the constitution.

When the fee of the street is in the abutting owner, and the purpose of the suit is to recover the just compensation guarantied by the constitution, the measure of damages is the same as in any other case of partial taking—the difference in the value of the property with and without the railroad. The above is taken from the valuable note of Mr. Lewis to the case of *McQuaid* v. *Railway Co* , 1 Amer. R. & Corp. R. 34, 47 (22 Pac. 899, 18 Or. 237) where very many authorities are collected and briefly discussed. See, also, 6 Am. & Eng. Enc. Law, p. 579; *Mayhew* v. *Norton*, 28 Am. Dec. 800 (17 Pick. 357) notes of editor. If such company has built its road by proper authority, it is not committing a nuisance, but exercising its rights, and can not be enjoined, unless the value of the property would be as effectually destroyed as if taken; but such lot-owner, whether he owns the fee in the street or not, may under the constitution by proper action at law recover from the company for any permanent damages, it may inflict on such adjoining lot, in the same manner, as if it had built its road without such proper authority. See *Spencer* v. *Railroad Co.*, 23 W. Va. 408. In such action (trespass on the case in case) he may recover damages necessarily resulting from the ordinary and proper use by the railroad company of its track in such street, and may give evidence developing the character of this ordinary and proper use, and how it affects the value of his property. *Fox* v. *Railroad Co.*, 34 W. Va. 466 (12 S. E. Rep. 757).

For permanent injury to the property, entire damages can be recovered in one suit, and the jury may take into consideration in ascertaining damages, if any, the market value of the property of the plaintiff before and after the laying of the track in question. 34 W. Va. 479 (12 S. E. Rep. 762). And just compensation is that which makes him whole, and, in respect to general benefits or damages

resulting from the road, leaves him in as good a situation as his neighbor, no part of whose property has been taken. Lewis, Em. Dom. § 471, p. 607. See Cooley, Const. Lim. 567. Both the instructions refused propound the law correctly, as applicable to the facts of this case, and one or the other should have been given.

The evidence as to the amount of damages was conflicting, yet defendant examined two witnesses who knew the property long and well, who said in their testimony that the market value of the property was as great after the road was constructed as it was before; that it was worth as much immediately after the railroad was constructed as it was immediately before. Therefore, there was evidence tending to prove the hypothesis upon which these instructions were based. They were correct, and were not abstract, within the meaning of the rule, and both should not have been refused. They covered the whole ground of defence, and whatever qualification might properly have been made, as based on what any part of the evidence may have tended to prove, the defendant was not required to suggest or supply it. And under our view of the pleadings as already discussed, nominal damages, as such, were not recoverable ; for plaintiff did not sue for an invasion or infringement of a legal right, as for a trespass or a nuisance, but for just compensation for the damages done to his property. The tortious entry or creation of a nuisance, if any, he elected to waive for this occasion. These instructions do not forbid the jury from taking into consideration any circumstance which there was evidence tending to prove, which tended to show the amount of the depreciation ; such as the constant running of the trains by day and night, the noise, smoke, vibration, etc. The court was not asked to instruct as to any of these.

It is argued on behalf of plaintiff that he bought it for a home, and is compelled to use it for that purpose, but the road renders it wholly unfit. If the property in question had, before the laying of the track in Coal street, any special value or fitness as a residence or home or from any other fact or circumstance, such fact was competent evidence for the jury, so far as it tended to help estimate the

fair market value before the injury complained of; but if counsel mean that the mental suffering of plaintiff by reason of his home being rendered uncomfortable, and his reluctance to leave it because it is his home, may be considered by the jury to swell the damages beyond the full depreciation, as shown by the difference between the full fair market price before the laying of the track and after, then his contention can not be made good upon either principle or authority. If upon authority, he produces none; on the contrary the authorities already cited and referred to are against him, as is necessarily implied in the mode of measurement already given. Not on principle, for, although all can understand his attachment to his home, who can estimate its equivalent in dollars and cents? And if you put yourself in his place you are carried away by fanciful estimates into imaginary values. But the law of redress in such cases must confine itself to the real and substantial; it can inflict no punishment for a lawful act, nor give any *solatium* for any of its inevitable consequences. The hardship in that respect, whatever it may be, is one that in the nature of things can not be compensated in money. The law must deal with all alike, and under any other rule there would be no end to fanciful damages; and the inconvenience and discomfort of every abutting home and residence along the line, however great or small it may be, would have to be somehow weighed and accounted for.

There remains to be considered the error assigned in admitting and rejecting certain testimony against defendant's objection, to which it excepted, with the note of the reporter made at the place where it occurred, with no other formal bill of exceptions except that this is a formal bill of exceptions to the overruling of the motion for a new trial, in which the grounds of the motion are stated to be that the verdict is contrary to the law and the evidence, and is excessive; and the certificate setting out all the evidence is made by reference a part of this bill, and a memorandum is entered on the order book saying that "these exceptions noted in the certificate of evidence are saved to the parties."

What must the appellant do in the court below to save

and make available the errors complained of here? No motion for a new trial is necessary where the error relates to the judgment or pleading, such as sustaining or overruling demurrer; but in all other cases the complainant must move the trial court for a new trial, so that that court may review its rulings; otherwise, this Court will deem them to have been waived. *State* v. *Phares,* 24 W. Va. 657; *Sammons* v. *Hawyers,* 25 W. Va. 678; *State* v. *Thompson,* 26 W. Va. 149; *Danks* v. *Roadheaver, Id.* 274; *State* v. *Rollins,* 31 W. Va. 363 (6 S. E. Rep. 923.) See *Searle* v. *Railway Co.,* 32 W. Va. 370, 378 (9 S. E. Rep. 248); also *Shrewsbury* v. *Miller,* 10 W. Va. 115, Syll. point 4.

In *Gregory's Adm'r* v. *Railroad Co.,* 37 W. Va. 606, 609 (16 S. E. Rep. 819) the certificate of evidence showed as in this case, that defendant objected to the evidence, objection, overruled, exception taken and noted; but no formal, bill of exceptions was taken to such ruling, nor was it stated on the motion for new trial as one of the grounds therefor, but the grounds specified on such motion were that the verdict was contrary to the law and the evidence and to the instructions given. Held, the error noted in the certificate of evidence will be treated as waived; and the reason given is that the court below is called on to review his rulings, and for this purpose the party complaining must in some way bring them to his attention definitely and specifically, so that he may not have to grope his way through the whole certificate of evidence in search of them, attended, as it must be with great labor and the danger of overlooking important ones; nor should the appellate court be placed in somewhat the same predicament.

The case before us is amenable to the same rule, and for the same reasons of convenience and policy in the due administration of justice. If there had, on the motion, been a direct reference to the page where each ruling is noted, and the assignment of error made the same reference to the same page of the printed record, it would show what our appellant picked out as important on second thought; at any rate, if any were overlooked, it would not be the fault of either court.

The constitution of the state makes it the duty of this

Court to consider and decide every point fairly arising upon the record. The trouble in cases like this grows out of the recent law requiring the trial court to certify and make part of the record the whole of the evidence involving the question, and makes it a part of the record to be considered by the court of appeals both upon the application for and hearing of the writ of error. Code, § 9, c. 131. What, under the constitutional provision, and under section 9, c. 131, of the Code, is to be regarded as points fairly arising upon the record, need not be further considered in this case, although it may give rise to some questions of practice not yet passed upon; but this case on the point involved as to the admission and rejection of testimony, and the mode in which the point must be saved to be available on appeal, is ruled by the case of *Gregory's Adm'r v. Railroad Co.*, 37 W. Va. 606 (16 S. E. Rep. 819).

Defendant's instruction No. 2, or its equivalent, should have been given, and it was error, for the reasons already stated, to refuse it, and for such error the judgement and verdict are set aside, and a new trial is awarded.